FILED
Clerk
District Court

AUG 19 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  LEONARDO M. RAPADAS
   United States Attorney
2  TIMOTHY E. MORAN
   Assistant United States Attorney
3  DISTRICT OF THE NORTHERN
     MARIANA ISLANDS
4  Horiguchi Building, Third Floor
   P.O. Box 500377
5  Saipan, MP 96950
   Telephone:  (670) 236-2982
6  Fax:        (670) 236-2985

7  Attorneys for United States of America

8                UNITED STATES DISTRICT COURT

9                  NORTHERN MARIANA ISLANDS

10  UNITED STATES OF AMERICA,     )   Criminal Case No. 05-00027
                                  )
11            Plaintiff,          )
                                  )
12       v.                       )   **COMPLAINT**
                                  )
13  ZHENG, MING YAN,              )
                                  )
14       a.k.a. "LI-NA,"          )
                                  )
15            Defendant.          )
                                  )
16  _____  )

17

18  THE UNDERSIGNED COMPLAINANT CHARGES UPON INFORMATION AND BELIEF THAT:

19                          **COUNT ONE**

20              (Interstate Travel for Purposes of Prostitution)

21       On or about October, 2004, through August, 2005, in the District of the Northern Mariana

22  Islands and elsewhere, ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, unlawfully, willfully

23  and knowingly, transported individuals in interstate and foreign commerce, and in any Territory and

24  Possession of the United States, with the intent that such individuals engage in prostitution and in

25  sexual activity for which those individuals may be charged with a criminal offense,

26              (Title 18, United States Code, Sections 2421 and 2).

27

28

COMPLAINANT FURTHER STATES:

I, JAMES T. BARRY, being duly sworn and under oath, hereby depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for over eight years. During my career with the FBI, I have conducted numerous investigations in Counter-terrorism, Violent Crimes, White Collar Crimes, and Civil Rights Violations. I have received extensive training in a broad range of investigative matters. Prior to my employment with the FBI, I served for over nine years as a Police Officer for the City of Tampa, Florida and conducted numerous criminal investigations in that capacity. I have a Bachelor of Arts in International Studies and a Master's Degree in Public Administration.

2. I make this affidavit based on my personal knowledge and information furnished to me by other law enforcement personnel. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact that I have learned during the course of my investigation. Unless otherwise indicated, all actions, statements and conversations that I have recounted in this affidavit are related in substance and in part.

3. On June 15, 2005, I met with six employees of ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, all of whom were contract workers from the People's Republic of China. I had several meetings with these employees since then. Because the six employees are native Chinese speakers, I used the services of Mei Lynch of the U.S. Department of the Interior, Federal Ombudsman's Office, as interpreter for the initial and all subsequent meetings. I learned the following:

   a. ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, with the assistance of her boyfriend, Liu Chang Da, operates five businesses in Saipan under two corporations, Great Corporation (also known as Greate Corporation) and Perfect Corporation. The businesses operated under those corporate entities are TEA HOUSE CLUB KARAOKE, above the 777 Poker Room, 369 NOODLE HOUSE, REAL LIVE FISH RESTAURANT, CHAN MING MARKET, and GOLDEN CUT HAIR SALON, all in the Garapan area of Saipan.

   b. One employee, Lian Wei, is from Dalian, China. She was recruited by

2

an employment agency there for a job in Saipan. She had been a physical therapist in China and was told she would work as one in Saipan for $7.00/hour. She paid $1,900 to the agency and arrived in Saipan on October 3, 2004.

      c.      The day after her arrival, Lian Wei reported for her first day of work. Her boss, ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, told her that her job would not be as a massage therapist, but as a prostitute. Lian initially refused but ZHENG told her that the only job available for her was as a prostitute. Lian had no money, was concerned for her safety, and asked if she could return to China. ZHENG told her the only way to make money for a ticket was through prostitution. Lian asked if the agency could pay her back. ZHENG said that Lian would have to take that request up with the agency in China.

      d.      Another employee, Chi Xiumei, was also recruited by an employment agency in Dalian, China. She paid about $4,000 to the agency for the entry permit. She saw that her permit application stated that she would work as a choreographer, although she has no experience as a choreographer, but the recruiter told her that she would work as a waitress at $7.00/hour. She also agreed that she would owe half of the fee, about $2,400, to ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, her employer in Saipan. Chi arrived on October 3, 2004. After arriving in Saipan, she found that ZHENG had no use for a choreographer.

      e.      The day after arrival, Chi reported for work at Tea House Club in Garapan. Her boss, ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, told her that her job would not be as a waitress, but as a prostitute. She also initially refused until ZHENG told her that the only job available for her was as a prostitute. Chi had no money and was concerned for her safety. She complained to ZHENG that she had paid a lot of money to come to Saipan to work as a waitress. ZHENG told her that prostitution was the only way to work off her debt to her.

      f.      A third employee, Wei Qiuxiang, was recruited by the same employment agency as Chi Xiumei and Lian Wei in Dalian, China for a job in Saipan. She paid about $1,250 to the agency for the entry permit. She agreed that she would also owe about $5,000 to ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, her employer and had to buy her own plane

ticket in Saipan. She saw that her permit application stated that she would work as a purchasing agent, in which she had some experience, but the recruiter told her that she would work as a waitress at $7.00/hour.

  g. Wei Qiuxiang arrived on November 11, 2004. The next day she reported for work at Tea House Club in Garapan. Her boss, ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, told her that her job would not be as a waitress, but as a prostitute. Initially, she refused until ZHENG told her that the only job available for her was as a prostitute. Wei said she would go back to China. ZHENG refused to let her go without paying the $5,000 that she owed, reminding her that she had signed a contract to work off the $5,000. Wei felt she was not allowed to leave, had nowhere to go and knew no one in Saipan. She felt that she had to pay the money back before she could leave.

  h. Lian Wei, Wei Qiuxiang, and Chi Xiumei were forced to work as prostitutes at the Tea House Club. They were forced to work every day, from 5:00 pm to 2:00 am. ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, told them that they had to have nicknames because she did not want their real names in the books. Lian called herself "Wei Wei," Chi called herself "Meng Xue," and Wei called herself "Jin Jin." The girls would wait inside the karaoke bar, while another employee, acting as a pimp, would find customers outside and bring them in. Customers were allowed to pick a girl; then they would go to a room in the back of the bar for sex. Some nights they would only have a few customers, some nights there were none. ZHENG would come in at the end of the night to collect that night's earnings.

  i. All three women stayed in barracks owned by ZHENG, MING YAN, a.k.a. "LI-NA," the defendant. None of them wanted to stay, but they felt they had no choice. They were told not to file complaints with the Department of Labor.

  j. Lian was paid nothing for the first six months that she worked for ZHENG, MING YAN, a.k.a. "LI-NA," the defendant. ZHENG told her that her rent, the recruiter's fee, taxes, and other expenses took up all of her income for the first six months. After six months, ZHENG started paying her, but still took deductions. They were not paid by the hour. They received

a portion of the money that each customer paid. She estimated that, at $7.00/hour, ZHENG owed her about $15,000.

    k. Chi was paid nothing for the first six months that she worked for ZHENG, MING YAN, a.k.a. "LI-NA," the defendant. ZHENG's boyfriend, Liu Changda, yelled at her and told her that she was too ugly to make enough money to repay her debt. ZHENG took all of her pay to cover her rent, taxes, her health certificate, and other expenses. After six months, ZHENG started to pay her, but still took deductions. She is now trying to send some money back to China so her family can repay the loan she took to pay the recruiter.

    l. Wei was also paid nothing for the first four months that she worked for ZHENG, MING YAN, a.k.a. "LI-NA," the defendant. By that time, she had worked off her debt. After four months, ZHENG started to pay her, but still took deductions. Wei said that she had never worked as a prostitute before, and had no intention to in Saipan. She estimated that ZHENG owed her about $1,000 for each month since she paid off her debt.

    4. On or about June 24, 2005, another individual (hereinafter "CW1") had a conversation with ZHENG, MING YAN, a.k.a. "LI-NA," the defendant. During the conversation, CW1 asked ZHENG about getting girls from China. ZHENG stated that when she needs more girls, she calls the recruiter in China and requests more prostitutes. This conversation was recorded. I have sent the recording to be translated.

///

WHEREFORE, deponent prays that ZHENG, MING YAN, a.k.a. "LI-NA," the defendant, be arrested and imprisoned or bailed as the case may be.

JAMES T. BARRY
FBI Special Agent

**SUBSCRIBED AND SWORN** to before me this 19th day of August, 2005.

The Clerk of the Court shall file this case under seal.

ALEX R. MUNSON
United States District Judge