F I L E D
Clerk
District Court

NOV – 8 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MING YAN ZHENG,<br><br>Defendant. | Case No. CR-05-00027<br><br><br>ORDER:<br><br>1) DENYING MOTION TO DISMISS; and<br>2) DENYING MOTION TO COMPEL DISCOVERY |

THIS MATTER came before the court on Thursday, November 3, 2005, for hearing of defendant's motion to dismiss for lack of subject matter jurisdiction. Plaintiff appeared by and through its attorney, Assistant U.S. Attorney Timothy E. Moran; defendant appeared personally and by and through her attorney, G. Anthony Long.

On August 25, 2005, the grand jury charged defendant with interstate travel for purposes of prostitution under 18 U.S.C. § 2421.

Defendant makes two motions: (1) motion to dismiss for lack of subject matter jurisdiction, or alternatively, on grounds that the government, as a matter of law, cannot prove the commerce transaction; and (2) motion to compel discovery on grounds that the government has not complied with initial discovery requirements and that the government did not specifically object to each of defendant's requests for disclosure.

THE COURT, having fully considered the written and oral arguments of the parties, hereby denies defendant's motion to dismiss and defendant's motion to compel discovery.

1

## I. Motion to Dismiss

2    Defendant moves the court to dismiss. While defendant states that the ground for dismissing

3 the count is for lack of subject matter jurisdiction, she also suggests that, as an alternative, the court

4 must dismiss the count because, as a matter of law, the government cannot prove the commerce

5 transaction element.[1]

6

7

## A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

8    Defendant moves the court to dismiss for lack of subject matter jurisdiction. Defendant

9 suggests two lines of reasoning. Defendant first suggests the following. Under section 501 of the

10 Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the

11 United States of America ("Covenant"), 48 U.S.C. § 1801 (1993), the Commerce Clause, Art. I, § 8,

12 cl. 3, and the Territorial Clause, Art. IV, § 3, cl. 2, does not apply to the Commonwealth of the

13 Northern Mariana Islands ("CNMI" or "Commonwealth"). Defendant asserts that because the

14 Covenant does not extend the Commerce Clause to the CNMI, the Commerce Clause cannot serve as

15 a basis for jurisdiction. Defendant continues that since 18 U.S.C. § 2421, the statute upon which the

16 indictment is based, was passed under Congress' interstate commerce power, the court must dismiss

17 for lack of subject matter jurisdiction.

18    This line of reasoning is flawed for at least two reasons. First, while defendant is correct that

19 the Commerce Clause and the Territorial Clause does not directly apply in the CNMI, the court does

20 _____

21    [1] While defendant states her motion for dismissal is based on lack of subject matter
jurisdiction, defendant stated in her reply brief that "the prosecution appears to confuse subject
22 matter jurisdiction with the ability to prove an essential element of the charge[,]" Defendant's Reply
Supporting Initial Pretrial Motions at 1 (Sept. 29, 2005), suggesting that defendant's ground for
23 dismissal is that the government, as a matter of law, cannot prove an element of the count. Normally
the court does not entertain arguments not set forth in the motion. See Fed. R. Crim. P. 47 ("A
24 motion must state the grounds on which it is based and the relief or order sought."). However, based
on defendant's statement at the hearing --- that the contention set forth in defendant's motion is the
25 same as that in United States v. Quituqua, Case No. CR-05-00023 --- the court will address this
ground for dismissal.
26

not base its subject matter jurisdiction solely on any provision of the U.S. Constitution. Rather, because of the "'unique' relationship between the United States and the CNMI," the Covenant is the sole source of the federal government's power in the CNMI. United States ex rel. Richards v. Leon Guerrero, 4 F.3d 749, 754 (9th Cir. 1993) ( "[I]t is solely by the Covenant that we measure the limits of Congress' legislative power [in the CNMI]."). Accordingly, the court's subject matter jurisdiction derives only from the Covenant.

Here, the alleged acts took place in the CNMI so the jurisdiction of the court is governed by the Covenant. In particular, § 502(a)(2) of the Covenant provides the court with jurisdiction over this case. Leon Guerrero, 4 F.3d at 754 (dicta) (explaining that "Section 502 governs the application to the CNMI of federal laws existing prior to January 9, 1978, and that Section 105 governs the application of federal laws enacted after that date."). As a threshold matter, § 502(a)(2) requires that the pertinent law must have existed before January 9, 1978, or that the pertinent law is a subsequent amendment of a law that existed before January 9, 1978. If the pertinent law satisfies the threshold, § 502(a)(2) provides a two-part test: (1) that the pertinent law is applicable to Guam; and (2) that the pertinent law "[is] of general application to the several States as [it is] applicable to the several States." Covenant § 502(a)(2); Saipan Stevedore Co. v. Dir. of the Office of Workers' Comp. Programs, 133 F.3d 717, 721 (9th Cir. 1998) (stating effective date of § 502 is January 9, 1978).

Following this course of analysis, 18 U.S.C. § 2421 originates from the Mann Act of 1910. White-Slave Traffic (Mann) Act, ch. 395, 36 Stat. 925 (1910). Furthermore, the Mann Act applies to Guam and the several States. See, e.g., United States v. Cozzetti, 441 F.2d 344 (9th Cir. 1971) (applying the Mann Act in Nevada); United States v. Taitano, 442 F.2d 467 (9th Cir. 1971) (applying the Mann Act in Guam). Accordingly, the court has subject matter jurisdiction over this case.

Second, defendant's contention that Fleming v. Department of Public Safety, Commonwealth of Northern Mariana Islands, 837 F.2d 480 (9th Cir. 1992), overruled on other grounds DeNieva v. Reyes, 966 F.2d 480 (9th Cir. 1992), supports her argument that the Mann Act does not fall within the court's § 502(a)(2) jurisdiction is misplaced. Defendant argues that the Ninth Circuit in Fleming

3

looked at the constitutional component of 42 U.S.C. § 1983 before determining whether the district court had jurisdiction under § 502(a)(2). Furthermore, Defendant argues that like Eleventh Amendment immunity, 18 U.S.C. § 2421 does not apply in the CNMI.

Defendant's first argument --- that the Ninth Circuit in <u>Fleming</u> looked to the constitutional component of 42 U.S.C. § 1983 before determining the applicability of § 502(a)(2) --- is in error. In <u>Fleming</u>, the Ninth Circuit found that 42 U.S.C. § 1983 applies in the CNMI, 837 F.2d at 404-05. In doing so, the Ninth Circuit applied the two part test of § 502(a)(2). The Ninth Circuit stated that because § 1983 was enacted before January 9, 1978, and it applies to Guam and the several States, § 1983 passes the strictures of Covenant § 502(a)(2). <u>Id.</u> At no time did the Ninth Circuit determine whether 42 U.S.C. § 1983 was passed under any of the provisions of the U.S. Constitution enumerated in § 501 of the Covenant.[2]

Defendant's second argument --- that Eleventh Amendment immunity is analogous to 18 U.S.C. § 2421 --- misinterprets the Ninth Circuit's analysis. After discussing the applicability of 42 U.S.C. § 1983 to the CNMI, the Ninth Circuit in <u>Fleming</u> discussed the applicability of Eleventh Amendment immunity to the CNMI. <u>Id.</u> at 405-06. The Ninth Circuit held that because Eleventh Amendment immunity is not codified in a statute, Covenant § 501 governs the court's power to apply Eleventh Amendment immunity to the CNMI. <u>Id.</u> Moreover, the Ninth Circuit noted that the omission of the Eleventh Amendment from § 501, along with the specific enumeration of

---

[2] In fact, the Ninth Circuit in <u>Hillblom v. United States</u>, 896 F.2d 426, 431 n.3 (9th Cir. 1990) (dicta), supports the court's decision. In dicta, the Ninth Circuit stated that Congress did not "inten[d] to govern the CNMI through the territorial clause or the commerce clause, in violation of the Covenant." The Ninth Circuit based this comment on deeming both the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1802(21), and the Swine Health Protection Act, 7 U.S.C. § 3802(4), as compliant with § 502(a)(2) of the Covenant. <u>Id.</u> The predecessor statute of the Magnuson-Stevens Fishery Conservation and Management Act was enacted on April 13, 1976. Pub. L. 94-265, 90 Stat. 331. The Swine Health Protection Act, however, did not exist until 1980. Pub. L. 96-468, 94 Stat. 2229 (Oct. 17, 1980). Accordingly, § 105, and not § 502(a)(2), should have been applied to the Swine Health Protection Act.

4

many amendments of the U.S. Constitution,[3] suggests that "the drafters considered fully each constitutional amendment and article for inclusion in the Covenant." Id. at 405. Accordingly, because § 501 does not provide the court with the power to apply the Eleventh Amendment to the CNMI, the Commonwealth is not afforded such immunity.

Here, defendant overlooks a crucial distinction between the Eleventh Amendment immunity analysis in Fleming and the applicability of 18 U.S.C. § 2421 in the CNMI. In Fleming, the Ninth Circuit analyzed the court's subject matter jurisdiction over Eleventh Amendment immunity under § 501 because the immunity comes directly from the U.S. Constitution and not from any statute. However, the Mann Act is a statute and, like  42 U.S.C. § 1983, section 502 of the Covenant, and not § 501, applies. As stated in Fleming, "[a] plain reading of the Covenant indicates a separation between constitutional and nonconstitutional provisions." 837 F.2d at 406.

Defendant's second line of reasoning suggests that the court must look at two sections of the Covenant to determine whether the court has subject matter jurisdiction: first, the court must determine whether Congress passed the statute under any of the enumerated powers under § 501; and second, the court must determine whether § 502 applies. Again, as stated above, the Ninth Circuit has never required the court to conduct an analysis of § 501 before determining whether § 502 applies.

Moreover, the problem with this suggestion is that defendant confuses the application of § 502 with § 105 of the Covenant. Section 105 deals with the powers of Congress to legislate with respect to the CNMI. Section 502, on the other hand, does not deal with Congress' power to legislate. Instead, it was drafted so that the new government of the CNMI would have a workable body of federal law at the time of its inception. Herman Marcuse, Covenant to Establish a

---

[3] Covenant § 501 specifically enumerates the following amendments to the U.S. Constitution that apply to the Commonwealth: "Amendments 1 through 9 inclusive; Amendment 13; Amendment 14, Section 1; Amendment 15; Amendment 19; and Amendment 26; provided, however, that neither trial by jury nor indictment by grand jury shall be required in any civil action or criminal prosecution based on local law, except where required by law."

Commonwealth of the Northern Mariana Islands, Basic Document and Annotations 41 - 43 (DOJ 1976) (collection of reports prepared by the Joint Drafting Committee on the Negotiating History, Senate Committee on Interior Insular Affairs, S. Rept. 94-433, House Committee on Interior and Insular Affairs, H. Rept. 94-364, the Marianas Political Status Commission ("MPSC"), and the U.S. Administration). As the MPSC stated:

> [Section 502(a)(2)] contains a formula for determining the initial manner in which federal laws other than the United States Constitution will apply to the Northern Marianas. This formula was devised for several reasons. First, it is necessary and appropriate to have a full body of federal law applicable to the Northern Marianas when the new Government of the Northern Mariana comes into effect. Second, it was not possible for the MPSC and the United States delegation to review each federal law to determine whether and how it should apply. For these reasons, a formula was developed which is based on laws which apply both to Guam and to the states of the union. Under Section 504 a Commission on Federal Laws will be established which, after a review of each federal law taking into account the policies of the Covenant and the local conditions in the Northern Marianas, will make recommendations to Congress concerning the application of these laws.

Marcuse, supra, at 42 (quoting  To Approve the Covenant to Establish the Commonwealth of the Northern Mariana Islands and for Other Purposes: Hearing Before the Subcomm. on Territorial and Insular Affairs of the Comm. on Interior and Insular Affairs, 94th Cong. 626-665 [hereinafter MPSC Memorandum]); see N. Mariana Islands v. United States, 399 F.3d 1057, 1065 (9th Cir. 2005), petition for cert. filed, 74 U.S.L.W. 3248 (U.S. Oct. 6, 2005) (No. 05-457) (noting that the MPSC is authoritative in discerning the meaning of the Covenant).

Furthermore, the Senate Committee on Interior Insular Affairs specifically stated that "[§ 502] does not relate to the power of Congress to legislate with respect to the Northern Mariana Islands; that issue is dealt with in section 105." Marcuse, supra, at 41 (quoting Section-by-Section Analysis of the Covenant of the Report of the Senate Committee on Interior Insular Affairs, S. Rept. 94-433 [hereinafter Senate Committee Report]). The Senate Committee Report goes on to say that § 502 was created to extend all "federal laws applicable to Guam . . . unless they are locally restricted to Guam, such as the Organic Act of Guam." Marcuse, supra, at 41 (quoting Senate

Committee Report). Moreover, both the House Committee on Interior and Insular Affairs and the MPSC specified that § 502(a)(2) is a two-part test and makes no mention of an analysis of § 501 before § 502(a)(2) may be applied. Marcuse, supra, at 42-43 (quoting Section-by-Section Analysis of the Covenant of the Report of the House Committee on Interior and Insular Affairs, H. Rept. 94-364, at 5-19, and MPSC Memorandum).

While the legislative history does not directly state that all pre-Covenant laws that pass the two part analysis of § 502(a)(2), regardless of the authority Congress asserted in creating the law, are effective in the CNMI, there are many references that lead to that conclusion. First, by 1978, Congress had passed a wide variety of statutes under the Commerce Clause, and thus, the drafters of the Covenant would have been well aware of the implications that the Commerce Clause had on the U.S. federal law. With this framework, the MPSC stated that the result of § 502(a)(2) "will be the application of a wide variety of federal laws to the Northern Marianas." Marcuse, supra, at 43. This suggests that the drafters meant all statutes that pass the two prong test of § 502(a)(2) are applicable to the CNMI.

Second, the MPSC Memorandum specifically mentions that laws that apply to Guam because it is a territory or possession of the United States are equally applicable to the CNMI. Marcuse, supra, at 42. The MPSC Memorandum states:

> The formula does not make the Northern Marianas into a territory or possession of the United States prior to termination of the Trusteeship Agreement. In many instances, however, the Northern Mariana Islands will be treated as if it were a territory or possession of the United States prior to termination, for many laws applicable to Guam because it is a territory or possession will be applicable to the Northern Marianas.

See also Marcuse, supra, at 44 (quoting Senate Committee Report). Yet, under Covenant § 501, the Territorial Clause does not apply to the CNMI. This suggests that the drafters intended that all laws that pass the two prong test apply to the CNMI.

Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

**B. Motion to Dismiss As A Matter of Law**

Defendant's assertion that the government, as a matter of law, cannot prove the commerce and territorial element --- that defendant "willfully and knowingly, transported individuals . . . in interstate or foreign commerce, and any Territory and Possession of the United States," Indictment (Aug. 25, 2005), --- lacks merit.  Defendant claims that "the prosecution, as a matter of law, cannot prove the requisite nexus to commerce since the interstate commerce clause [and the territorial clause were] not extended to the Commonwealth." Defendant's Reply Supporting Initial Pretrial Motions at 2 (Sept. 29, 2005). Defendant's reasoning is as follows. Defendant claims that this element of § 2421 is a "jurisdictional hook" based on the Commerce and Territorial Clause. Defendant further asserts that because the Commerce and Territorial Clause does not apply in the CNMI, the government, as a matter of law, cannot prove these facts.

The main problem with this argument is that defendant simply characterizes the commerce and territorial element as a jurisdictional hook because it contains interstate commerce activity or a territorial connection. However, the term "jurisdictional hook" or "jurisdictional element" is simply a label, a term of art, or what some people would term, "legalese." It is simply a legal conclusion that the element is "a provision . . . that requires the government to establish specific facts justifying the exercise of federal jurisdiction in connection with any individual application of the statute." United States v. Rodia, 194 F.3d 465, 471 (3rd Cir. 1999). However, because Congress' power over the CNMI is established in the Covenant and not the U.S. Constitution, the commerce and territorial element of § 2421, while a jurisdictional hook in the several States, is not a jurisdictional hook in the CNMI. In the CNMI, subject matter jurisdiction derives only from the Covenant. Leon Guerrero, 4 F.3d at 754 ("[T]he authority of the United States towards the CNMI arises solely under the Covenant.").

Accordingly, for all the reasons set forth above, the court denies defendant's motion to dismiss.

1

## II. Motion to Compel Discovery

2          Defendant also moves the court to compel the government to produce all discovery materials

3    pursuant to Federal Rules of Criminal Procedure 12(b)(4)(B) and 16, Federal Rule of Evidence

4    404(b), and Brady v. Maryland, 373 U.S. 83 (1963). In addition, defendant urges that regardless of

5    whether the requested materials are required to be produced under the above authorities, the court

6    must compel the government to produce all materials requested by defendant because the

7    government, instead of making specific objections to each request, made a blanket objection to all

8    discovery materials requested by defendant that the government has not already disclosed.

9          On August 27, 2005, defendant made a request by letter for the government to make an initial

10   production of discovery materials. With no response from the government, defendant filed her

11   motion to compel discovery on September 8, 2005. On September 22, 2005, the government made an

12   initial production of discovery materials ("first set of discovery materials") pursuant to the Federal

13   Rule of Criminal Procedure 16(a).  On November 2, 2005, the government supplied defendant with

14   additional discovery materials ("second set of discovery materials"). Having just received these

15   materials, defendant had not yet inspected the second set of discovery materials by the time of the

16   hearing on November 3, 2005.

17         There is no question that the government must provide all discovery materials, if they exist,

18   pursuant to Federal Rules of Criminal Procedure 12(b)(4)(B) and 16, Federal Rule of Evidence

19   404(b), and Brady. What the court has to determine, therefore, is whether plaintiff has complied with

20   the above authorities and whether defendant's specific requests fall within one of the above

21   authorities.

22         During the hearing, defendant conceded that the government has probably disclosed all Rule

23   16, Rule 404(b), and Brady materials and has complied with Rule 12(b)(4)(B) notice.[4] The

24

25   _____

26         [4] Defendant was not entirely sure that the government has complied with its discovery
     obligations because defendant had not yet inspected the second set of discovery materials.

1  government has stated in its opposition brief and at the hearing that it is in compliance with its

2  discovery obligations. Furthermore, the government has stated that the investigation in this matter is

3  ongoing, and it will provide future disclosures of any new material that falls within the government's

4  duty to disclose.

5      Because these representations were made by the government's attorney as an officer of the

6  court, the court denies defendant's motion to compel the government to disclose Rule 16, Rule

7  404(b), and Brady materials and Rule 12(b)(4)(B) notice because the court finds that the government

8  has complied with its discovery obligations. However, considering that the government made the

9  second set of discovery materials available to defendant just prior to the hearing, the court will

10 entertain another motion if defendant finds that the second set of discovery materials does not

11 conform to Rule 16, Rule 404(B), Rule 12(b)(4)(B), or Brady.

12     Defendant also contends that the court must compel the government to produce all twenty-

13 three categories of materials that defendant specifically requested. Defendant asserts that such

14 motion must be granted because the government's statement in its opposition brief that "[t]he

15 Government respectfully requests that the Court deny the defendant's motion [to compel] . . .

16 because the Government is currently in compliance with its discovery obligations," Government's

17 Memorandum in Opposition to Defendant's Motions to Dismiss, for Discovery, and to Sever at 1

18 (Sept. 22, 2005), is not a formal objection to defendant's discovery requests. Defendant further

19 argues that compliance with discovery obligations does not prevent the government from disclosing

20 information beyond the government's discovery obligations, and that the court may compel the

21 government to do so.

22     The court disagrees with defendant's assertions. First, the government made a sufficient

23 objection to defendant's requests for disclosure. Considering the entirety of the government's

24 opposition brief, the court considers the government's request that the court deny defendant's motion

25 to compel as a blanket objection to all of defendant's requests for materials that the government has

26 not yet provided. Accordingly, the court denies the defendant's motion to compel discovery of

10

1   material requested by defendant that goes beyond the government's discovery obligations.

2          Second, defendant's argument --- that the court may compel the government to disclose

3   further information that the government may, but is not required to, disclose --- goes beyond the

4   essence of a motion to compel. The court will not compel a party to go beyond its duties and

5   obligations simply because that party may, if it chooses to do so, submit to the opposing party's

6   request. Compelling a party to do a particular act requires that that person have an obligation to do

7   that act.

8          FOR THE FOREGOING REASONS, the court denies defendant's motions.

9   DATED this 8ᵗ ʰ day of November, 2005.

10

11                                          _____
                                                   ALEX R. MUNSON
12                                                         Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                            11