LEONARDO M. RAPADAS
United States Attorney
TIMOTHY E. MORAN
Assistant United States Attorneys
DISTRICT OF THE NORTHERN
    MARIANA ISLANDS
Horiguchi Building, Third Floor
P. O. Box 500377
Saipan, MP  96950-0377
Telephone:   (670) 236-2982
Fax:              (670) 236-2985

Attorneys for United States of America

UNITED STATES DISTRICT COURT
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>ZHENG, MING YAN,<br>      a/k/a "LI-NA," and<br>LIU, CHANG DA,<br><br>                Defendants. | Criminal Case No. 05-00027<br><br>GOVERNMENT'S REVISED PROPOSED JURY INSTRUCTIONS<br><br>Trial: Jury<br>Date: August 14, 2006<br>Time: 1:00 p.m.<br>Judge: Hon. Alex R. Munson |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Leonardo M. Rapadas, United States Attorney, and Timothy E. Moran, Assistant United States Attorney, and hereby files its proposed revisd jury instructions regarding the sex trafficking counts.

                                    Respectfully submitted,

                                    LEONARDO M. RAPADAS

                                    United States Attorney for the
                                    Districts of Guam and NMI


                    By: _____
                            TIMOTHY E. MORAN
                            Assistant United States Attorneys

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**REQUEST NO.**

**<u>Sex Trafficking</u>**

Counts Two and Three of the superseding indictment charge the defendants with the crime of sex trafficking. Title 18, United States Code, Section 1591 makes it a federal crime or offense to recruit, entice, harbor, transport, provide or obtain, in or affecting interstate commerce, a person, knowing that force, fraud or coercion will be used to cause that person to engage in a commercial sex act. That provision also makes it a Federal crime or offense to benefit financially from participation in a venture engaged in such misconduct.

To find a defendant guilty of sex trafficking, as charged in Counts Two and Three, you must find that the government has proven each of the following elements beyond a reasonable doubt:

<u>First</u>:   The defendant knowingly recruited, enticed, harbored, transported, provided, or obtained a person; **OR** the defendant knowingly benefitted, financially or by receiving something of value, from participating in a venture that recruited, enticed, transported, provided, or obtained a person;

<u>Second</u>:   The defendant knew that force, fraud, or coercion would be used to cause the person to engage in commercial sex acts; and

<u>Third</u>:   The defendant's acts were in or affecting interstate commerce.

Counts Two and Three charge that the defendants trafficked and financially benefitted from the trafficking of Lian, Wei and Chi, Xiumei knowing that force, fraud and coercion would be used to cause each to engage in commercial sex acts. Count Two alleges that the defendants did so with respect to Lian,Wei; and Count Three with respect to Chi, Xiumei.

1  <u>Authority</u>

2  18 U.S.C. § 1591

# REQUEST NO.

## Sex Trafficking – First Element

The first element of the crime of sex trafficking requires that the defendant either: (a) knowingly recruited, enticed, harbored, transported, provided, or obtained a person; **OR** (b) knowingly benefitted, financially or by receiving something of value, from participating in a venture that did one of these things.

Therefore, there are two different ways for the government to satisfy the first element of sex trafficking. The first is by proving that the defendant himself knowingly engaged in one of a list of prohibited trafficking activities. The second is by proving that the defendant knowingly took part in a venture that engaged in one of those trafficking activities and benefitted, financially or by receiving a thing of value, from that venture.

The first way to satisfy the first element is by proving that the defendant himself knowingly recruited, enticed, harbored, transported, provided, or obtained a person. In considering whether a defendant did any of these things, I instruct you to use the ordinary, everyday definitions of these terms. "Recruit" means to seek to enroll. "Harbor" means to give or afford shelter to. "Transport" means to take or convey from one place to another. "Provide" means to furnish, supply or make available. "Obtain" means to gain possession of or acquire. "Entice" means to attract, induce or lure using hope or desire.

To prove the first element of sex trafficking in the second, or alternative, way, the government need not prove that the defendant himself engaged in the trafficking activities of recruiting, enticing, harboring, transporting, providing, or obtaining a person. The government need only prove that there was a venture that engaged in one of those activities, that the defendant participated in some way in that venture, and that the defendant benefitted, financially or by receiving a thing of value, from that venture.

In considering whether a defendant participated in such a venture, I instruct you that a venture is defined as "any group of two or more individuals associated in fact, whether or not as

a legal entity." You may find that a defendant participated in a venture prohibited by the sex trafficking law if the defendant took part in that venture in any way. The defendant may be, but need not be, one of the people who formed that venture. Likewise, the defendant need not be an organizer or main participant in the venture, and need not have participated throughout the length of the venture. It is enough if the defendant took some part in the venture for any period of time while the venture was still ongoing, even if the part he played was minor, and even if it was not related to the actual recruiting, enticing, harboring, transporting, providing or obtaining of a person for commercial sex acts.

To benefit, financially or by receiving a thing of value, from a venture, a defendant must receive some form of profit, benefit, value or advantage, no matter how minor, from the venture.

Finally, the term "knowingly" means means voluntarily and intentionally and not because of mistake or accident.

Authority

18 U.S.C. § 1591, Webster's New Riverside University Dictionary (Riverside Publishing Co. 1994), Black's Law Dictionary (Second Edition 2001), 18 U.S.C. § 1591(c)(3) (defining "venture").

**REQUEST NO.**

**Sex Trafficking – Second Element**

The second element of sex trafficking requires the government to prove beyond a reasonable doubt that the defendant knew that force, fraud, or coercion would be used to cause the person to engage in a commercial sex act.

The term "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person." The thing of value may be money or any other tangible or intangible thing of value that may be given to or received by any person, regardless of whether the person who receives it is the person performing the commercial sex act.

The term "force" means any form of power, violence, or physical pressure directed against another person.

The term "fraud" means any deliberate act of deception, trickery or misrepresentation.

The term "coercion" means threats of serious harm to or physical restraint against any person, **OR** any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person. "Threats of serious harm," which I just mentioned, include threats of both physical and non-physical types of harm. They include threats of any consequences, whether physical or non-physical, that are sufficient, under all the surrounding circumstances, to compel or coerce the alleged victim to perform commercial sex acts that she would not have otherwise been willing to perform.

In considering whether force, fraud or coercion would be sufficient to cause an alleged victim to engage in commercial sex acts, you may consider not only the totality of the defendant's conduct, but also the alleged victim's special vulnerabilities, if any. By this I mean that you may consider any aspect of the alleged victim's age, background, station in life, physical or mental condition, experience or education, or any inequalities between the alleged victim and the defendant or any others working in concert with him. Simply put, you may ask whether an alleged victim was vulnerable in some way such that the use of force, fraud or coercion would have been enough to compel a reasonable person in the same circumstances to engage in commercial sex acts.

[To prove sex trafficking, the government does not need to link each of the threats allegedly made or actions allegedly taken against an alleged victim to particular commercial sex acts performed by her.

The government also need not prove physical restraint – such as the use of chains, barbed wire or locked doors – in order to establish the offense of sex trafficking.

Finally, whether a person is paid a salary or a wage is not determinative of the question of whether that person has been compelled to engage in sex trafficking. In other words, if a person is compelled to engage in a commercial sex act through force, fraud, or coercion, such service is involuntary even if she is paid or compensated for the work.]

Authority

18 U.S.C. § 1591(c)(1) (defining commercial sex act); United States v. Williams, 705 F.2d 603, 623 (2d Cir. 1983) (construing "anything of value" language broadly in context of bribery statute); Black's Law Dictionary (Second Edition 2001) (defining force); Webster's New Riverside University Dictionary (Riverside Publishing Co. 1994) (defining fraud); 18 U.S.C. § 1591(c)(2) (defining coercion); H.R. Conf. Rep. No. 106-939 at 101 (2000); 2000 WL 1479163 (Oct. 5, 2000) (explaining concept of serious harm, relevance of victim's vulnerabilities under sister statute, 18 U.S.C. § 1589 (forced labor)); 22 U.S.C. § 7101(b) (explaining concept of serious harm; "Traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models"); Eleventh Circuit Pattern Jury Instructions, Criminal, Offense Instruction No. 59 (Involuntary Servitude and Peonage, 18 U.S.C. §§ 1581, 1584) ("In deciding whether a particular person reasonably believed that there was no way to avoid continued service, you should consider the method or form of the coercion threatened or used in relation to the person's particular station in life, the person's physical and mental condition, age, education, training, experience and intelligence..."); United States v. Kozminski, 487 U.S. 931, 948, 952 (1988) (under related statute, 18 U.S.C. § 1584, "the vulnerabilities of the victim are relevant in determining whether the physical or legal coercion or threats thereof could plausibly have compelled the victim to serve."); United States v. Bradley, 390 F.3d 145 (1st Cir. 2004) (same); United States v. Veerapol, 312 F.3d 1128, 1131-32 (9th Cir. 2002) (same); United States v. Alzanki, 54 F.3d 994, 1002 (1st Cir. 1995) (same).

**REQUEST NO.**

**Sex Trafficking – Third Element**

To satisfy the third and final element of the crime of sex trafficking, the government must prove beyond a reasonable doubt that a defendant's sex trafficking activities were, or that the venture associated with those activities was, either in interstate commerce or affected interstate commerce. The government need not prove both.

"Interstate commerce" means the flow of commerce or business activities between a state and any point outside of that state. Acts and transactions which are economic in nature and cross state lines are "in" interstate commerce. Acts and transactions which are economic in nature and affect the flow of money in the stream of commerce to any degree, however minimal, "affect" interstate commerce.

To show that a defendant's conduct affected interstate commerce, it is not necessary for the government to prove that a defendant specifically knew or intended that the recruiting, enticing, harboring, transporting, providing or obtaining of a person to engage in commercial sex acts would affect interstate commerce; it is only necessary that the natural consequences of such conduct would be to affect interstate commerce in some way, even if minor.

If you find beyond a reasonable doubt that a defendant's recruitment, enticement, harboring, transportation, providing or obtaining of a person for the purpose of engaging in commercial sex acts was economic in nature and involved the crossing of state lines, or was economic in nature and otherwise affected the flow of money in the stream of commerce to any degree, however minimal, you may find that the third element of the offense of sex trafficking has been satisfied.

Authority

United States v. King, 276 F.3d 109 (2d Cir. 2002) (acts and transactions which cross state lines are "in" interstate commerce); United States v. Holston, 343 F.3d 83, 91 (2d Cir. 2003)(acts and transactions which are economic in nature and affect the flow of money in the stream of commerce to any degree, however minimal, "affect" interstate commerce); United States v. Gray, 260 F.3d 1267, 1272-76 (11th Cir. 2001) (interstate commerce requirement of Hobbs Act requires only minimal effect on commerce and effects can be aggregated); United States v. Gregg, 226 F.3d 253, 261-63 (3d Cir. 2000) (defining effect on interstate commerce broadly, to include minimal activity whose impact is felt in the aggregate, where activity involved is

economic or commercial in nature); First Circuit Criminal Pattern Jury Instructions, 18 U.S.C. § 1029(a)(2); Fifth Circuit Criminal Pattern Jury Instructions, § 2.73 (defining interstate commerce requirement under Hobbs Act); Seventh Circuit Criminal Pattern Jury Instructions, 18 U.S.C. § 1029(a)(2) (defining interstate commerce); 18 U.S.C. § 1951 (Interstate Commerce - definition).