Law Office of G. Anthony Long
P. O. Box 504970, Beach Road
San Jose, Saipan, MP 96950
Telephone No. (670) 235-4802
Facsimile No. (670) 235-4801

Attorney for Defendant Zheng, Ming Yan

## IN THE UNITED STATES  DISTRICT COURT
### FOR THE
### NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL  ACTION  NO. 05-00027 |
| | ) | |
| Plaintiff | ) | |
| | ) | POST TRIAL MEMORANDUM |
| v. | ) | SUPPORTING MOTION FOR |
| | ) | ACQUITTAL |
| ZHENG MING YAN and LIU, CHANG | ) | |
| DA | ) | |
| | ) | Date: Oct. 19, 2006 |
| Defendant | ) | Time: 9:00 a.m. |
| _____ | ) | |

## I.      STANDARD FOR A RULE 29 MOTION FOR ACQUITTAL

FRCrP  Rule 29 provides for a motion for judgment of acquittal if the evidence is

insufficient to sustain a conviction on one or more offenses charged in the indictment. *United*

*States  v. Young*,  2005 WL 1313448 at 1 - 4 (E.D.Wash. 2005).  In evaluating the sufficiency of

the evidence,  the court views the evidence in the light most favorable to the prosecution and

determines whether a reasonable fact finder could find the essential elements of the charged

crime beyond a reasonable doubt. *Id.*  Pursuant to this standard, mere suspicion or speculation

cannot be the basis for the creation of logical inferences to substantiate conviction. *United States*

*v. Thomas*, 453 F.2d 141, 143 (9th Cir. 1971). Likewise, the mere presence of relevant evidence

is not enough to deny acquittal. See *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S. ct. 2781, 2789

1

(1979). The relevant evidence establishing each essential element of the crime must be more than a "mere modicum" *Id*, 443 U.S. at 320, 99 S. Ct. at 2789, it must be sufficient. *Id*, 443 U.S. at 316, 99 S. Ct. at 2787. Sufficient proof being evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the crime. *Id*. Thus, there must be substantial evidence establishing the existence of each essential element of the charged crime. *United States v. Bazuaye*, 240 F.3d 861, 863 (9th Cir. 2001)[On a challenge to the sufficiency of the evidence, the standard is whether there is substantial evidence to support the conviction.]. As stated in *United States v. Orrico*, 599 F.2d 113 (5th Cir. 1979):

> Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.

599 F.2d at 117 quoting *United States v. Green*, 548 F.2d 1261, 1266 (6th Cir. 1977). The evidence in this case is insufficient to support a guilty verdict on count five of the indictment.

## A.    ACQUITTAL IS PROPER ON COUNTS 4 AND 5

The United States' authority over the Commonwealth of the Northern Mariana Islands (CNMI) is not absolute. *Sagana v. Tenorio*, 384 F.3d 731, 734 (9th Cir. 2004). The United States authority over the Commonwealth arises solely under the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States ("Covenant"). *Northern Mariana Islands v. United States,* 399 F.3d 1057, 1062 - 1063(9th Cir. 2005 *Sagana,* 384 F.3d at 374; *U.S. ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 754 (9th

Cir. 1993); *Hillblom v. United States*, 896 F.2d 426, 429 (9th Cir.1990). Thus the applicability

in the Commonwealth of 18 U.S.C. § 1591 is determined solely by examining the statute in light

of the Covenant. *Northern Mariana Islands v. United States, supra; Sagana, supra; Richards,*

*supra.* The Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political

Union with the United States of America ("Covenant") is the sole source for the United States

authority over the Northern Mariana Islands. *United States ex. rel. Richards v. Guerrero*, 4 F.3d

749 (9th Cir. 1993). *See Northern Mariana Islands v. United States,* 399 F.3d 1057, 1062 -

1063(9th Cir. 2005)[ "We do not dispute that 'the authority of the United States towards the

CNMI arises solely under the Covenant.'"]; *Sagana v. Tenorio*, 384 F.3d 731, 734 (9th Cir. 2004)

[The United States' authority over the CNMI is not absolute as it is limited by the Covenant].

*Richards* further noted that:

> [t]he Covenant has created a "unique" relationship between
> the United States and the CNMI, and its provisions alone
> define the boundaries of those relations. (citation omitted)

4 F.3d at 754. *See Hillblom v. United States*, 896 F.2d 426, 429 (9th Cir. 1990). Thus the

applicability of federal statutes in the Commonwealth is determined solely by examining the

statute in light of the Covenant. *Northern Mariana Islands v. United States, supra; Sagana,*

*supra; Richards, supra*. To this extent, Covenant Section 502 governs the applicability of

federal statutes in the Commonwealth prior to January 9, 1978 while Covenant § 105 determines

the applicability of federal statutes enacted after that date. *Richards*, 4 F.3d at 756.

The federal statutes serving as the basis for counts 4 and 5 were enacted prior to January

9, 1978. Thus, their applicability is determined by Covenant § 502. *Richards*, 4 F.3d at 756.

Counts 2 and 3 are based on the sex trafficking statute, 18 U.S.C. § 1591 which was enacted after

January 9, 1978 thereby meaning the statute's applicability is governed by Covenant § 105.

*Richards*, 4 F.3d at 756.  As discussed below, acquittal is proper on counts  3, 4, and 5 as the

jurisdictional element of each statute could not be proven beyond a reasonable doubt as a matter

of law. Acquittal is proper on counts 1 and 2 as the court lacked subject matter jurisdiction over

those charges since 18 U.S.C. § 1591 is inapplicable in the Commonwealth.

Count 4 charged a Mann Act violation, 18 U.S.C. §2421.2 while count 5 charged foreign

transportation of persons pursuant to a fraudulent scheme in violation of 18 U.S.C. § 2314.  It is

undisputed that the interstate or foreign commerce element of a Mann Act offense is what allows

for the exercise of federal jurisdiction. *United States v. Hattaway*, 740 F.2d 1419, 1327 (7thCir.

1984). The same is true for count 5. *Walker v. U.S.*, 802 F.2d 1106, 1107

(9th Cir. 1986). Thus, interstate or foreign commerce  is the jurisdictional element or

"jurisdictional hook" for federal jurisdiction for counts 4 and 5. A "jurisdictional hook" is best

described as "a provision in a federal statute that requires the government to establish specific

facts justifying the exercise of federal jurisdiction in connection with any individual application

of the statute." *United States  v. McCoy,* 323 F.3d 1114*, * 1124 (9th Cir. 2003) quoting  *United

States  v. Rodia*, 194 F.3d 465, 471 (3rd Cir. 1999). In other words, the purpose for a

"jurisdictional hook"  is simply a means to federalize a purely local crime. See McCoy, 323 F.3d

at 1124 - 1125. This jurisdictional element is different and distinct from subject matter

jurisdiction. As observed in  *United States  v. Ratigan* 351 F.3d 957  (9th Cir. 2003):

> [a] link to interstate commerce may be essential to Congress's substantive
> authority, *see United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131
> L.Ed.2d 626 (1995), but the existence of regulatory power differs from the
> subject-matter jurisdiction of the courts. *United States v. Martin*, 147 F.3d 529
> (7th Cir.1998), clarifies this point by holding **that proof of an interstate**

4

**transaction is no different from proof of any other element of a federal crime. "[T]he nexus with interstate commerce, which courts frequently call the 'jurisdictional element,' is simply one of the essential elements of [the offense]. Although courts frequently call it the 'jurisdictional element' of the statute, it is 'jurisdictional' only in the shorthand sense that without that nexus, there can be no federal crime**

*Id* at 380 - 381(emphasis added). An examination of the jurisdictional element for counts 4 and 5 in light of the Covenant reveals that the statutes' jurisdictional element or "hook" is inapplicable in the Northern Mariana Islands[1].

**A.    THE  COVENANT DOES NOT EXTEND THE COMMERCE CLAUSE TO THE COMMONWEALTH**

The commerce clause encompasses interstate commerce and foreign commerce. *United States  v. Clark*, 435 F.3d 1100 (9th Cir. 2006). Although distinctions exist between interstate commerce and foreign commerce, *Id* at 1110 -1116, the differences are immaterial to this case as Zheng contends the entire commerce clause does not apply within or to the Commonwealth.

As previously noted, the Covenant serves as the sole basis for the United States authority over the Northern Mariana Islands. *Richards*, *supra*. Covenant § 501(a) which extends certain, but not all, United States Constitutional provisions to the NMI,  *Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1439 (9th Cir. 1997); *Hillblom*, 896 F.2d at 428, is deemed to be a fundamental provision of the Covenant. *Commonwealth of Northern Mariana Islands v. Atalig*, 723 F.2d 682, 683 n. 9 99th Cir. 1984).  The commerce clause is one of the

---

[1]

This squarely presents the issue avoided in *Hillblom*.  896 F.2d at 431["We have not been called upon to adjudicate a challenge to a specific statute which violates a provision of the Covenant  or to interpret a particular section of the Covenant in light of a concrete and actual controversy."]

constitutional provisions not extended to the NMI pursuant to Covenant § 501. *Magna*, 107 F.3d at 1439. The 9th Circuit has not squarely addressed the applicability of the commerce clause to the Commonwealth or the implication of Covenant § 501 not extending the commerce clause to the Commonwealth. *See United States v. Vann Le,* Criminal Case No. 03-0001, (August 10, 2005 D. N.M.I.)(J. Tashima).

A similar issue was addressed in *Fleming v. Department of Public Safety, Commonwealth of Northern Mariana Islands*, 837 F.2d 401(9th Cir. 1988) overruled on other grounds, *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir.1992). *Fleming* concerned the applicability of the 11th amendment and whether the NMI possessed 11th amendment immunity. In noting that the Covenant did not extend the 11th Amendment to the Commonwealth, *Fleming* ruled that:

> [f]rom the specificity with which the applicable provisions of the United States Constitution are identified, it is clear that the drafters considered fully each constitutional amendment and article for inclusion in the Covenant. That they deliberately declined to include the eleventh amendment unequivocally demonstrates their desire that the Commonwealth not be afforded eleventh amendment immunity. As the Supreme Court long ago observed, "in an instrument well drawn, as in a poem well composed, silence is sometimes most expressive." *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 454, 1 L.Ed. 440 (1793) (opinion of Wilson, J.). Furthermore, neither the government of the United States nor of the Commonwealth has since approved any law, compact, or treaty that would have the effect of making the eleventh amendment applicable to the Commonwealth.

> Under these circumstances, the most basic rule of statutory construction is that the plain language of the statute should be regarded as conclusive. (citations omitted). Where the language of the Covenant is as clear as it is here, and the legislative history and purpose are not to the contrary, we may not impose eleventh amendment immunity on the Commonwealth.

*Id* at 405 - 406. This same logic and rationale applies equally with respect to the commerce

clause since the Covenant did not extend its application to the Commonwealth[2].


## C.     JURISDICTION IS NOT CONFERRED BY COVENANT § 502

Give the inapplicability of the commerce clause under § 501, the only possible basis for existence of the jurisdictional element with respect to counts 4 and 5 rests with Covenant § 502. Covenant §§ 502(a)(1), 502(a)(3) and 502(b) are not applicable on their face. This leaves Covenant § 502(a)(2)'s two prong test as the only possible provision under which the commerce clause can be found to apply with respect to the jurisdictional element in the Mann Act or the fraudulent transportation statute. According to Covenant § 502 (a)(2), laws applicable to Guam and which are of general application to the several States apply in the Commonwealth as they are applicable to the several states.  *Fleming*, 837 F.2d at 406. Section  502 (a)(2)'s two prong test is meant to:

> prevent the application of laws so as to reach **intraterritorial matters** within the Northern Marianas where similar intrastate matters with the states are not reached.  To reach such matters in the Northern Marianas would be inconsistent with the guarantee of local self-government.

**Section By Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands, ("Analysis")** 53 (February 15, 1975)[3][emphasis added]. However, the

---

[2]

This is consistent with the Covenant's guarantee of self-government as the United States lacks jurisdiction over immigration into the CNMI, Covenant § 503(a) and the CNMI is outside the customs jurisdiction of the United States, Covenant § 603(a). This means the United States has no jurisdiction over the movement of people and goods between the CNMI and any place outside thereof.

[3]

The Analysis is used to assist in discerning the meaning of the Covenant. *Northern Mariana Islands,* 399 F.3d at 1065.

inherent and irreconcilable conflict between the Mann Act jurisdictional element and the

inapplicability of the commerce and territorial clauses to the CNMI precludes exercising

jurisdiction over the Mann Act charges.

*Fleming* addressed the application of 11th Amendment Immunity to the CNMI in the

context of a 42 U.S.C. § 1983 claim. In noting that Covenant § 501(a) did not extend 11th

Amendment immunity to the Commonwealth, the court concluded that Covenant § 502(a)(2) did

not provide a "back door" for extension of the constitutional provision.

> [a] plain reading of the Covenant  indicates a separation
> between constitutional and nonconstitutional provisions.
> We  simply cannot  subvert the well defined  parameters
> of sections 501(a) and 502(a)(2) absent  clear legislative
> intent. Were we to incorporate the eleventh  amendment
> through   section   502(a)(2),  we  would  reduce  that
> amendment  to a mere "law"  generally applicable to the
> states, as opposed to a constitutional provision.

837 F.3d at 406.  The same basic rationale applies in this case. The commerce clause was not

extended to the CNMI and the Covenant does not otherwise give the United States jurisdiction over

intra-CNMI commerce or commerce between the CNMI and any place outside thereof. Covenant §

502(a)(2) can not, therefore, serve as the vehicle for imposition of  federal criminal liability under

the Mann Act.  As reasoned by *Magana*:

> "[i]f  authority is found in a statue but not in the  Constitution, the
> statute is unconstitutional. If authority is found in the Constitution
> but not in a statute,  the  jurisdiction  does  not  exist  because
> Congress has not conferred it upon the courts."

107 F.3d at 1442 quoting Ray Forrester, **The Nature of a Federal Question**", 16 Tulane L. Rev.

363, n.4 (1942).

Because the commerce clause is not specifically extended to the CNMI by Covenant §

501, this precludes reliance on Covenant § 502(a)(2) for imposing the constitutional provision

upon the CNMI.  *Fleming*, 837 F.2d 401, 406, (9th Cir. 1988).  To do so would reduce the

constitutional provision to a mere "law". *Id* (emphasis in original). Accordingly, when a particular activity is beyond the reach of the commerce clause and a federal criminal statute aimed at the activity expressly incorporates the commerce clause as a jurisdictional element, then federal courts lack criminal jurisdiction over such activity. *See McCoy*, 323 F.3d at 1124 - 1130 (9th Cir. 2003)[Statute's commerce clause  "jurisdictional hook"  is "useless" and  it "provides no support for the government's assertion of federal jurisdiction" as the alleged activity does not fall within reach of the commerce clause]. This is precisely the circumstance in this case. The "jurisdictional hook" fails to confer jurisdiction.

Fleming's reasoning and analysis can not be disregarded as this court is bound by 9th Circuit precedent. *See Zuniga v. United Can Co*, 812 F.2d 443, 450 (9th Cir.1987) (stating that district courts are bound to follow the precedents of their own circuit). Under the law of the circuit doctrine, a district court in the Ninth Circuit  is bound to follow Ninth Circuit authority until such precedent is overruled by an intervening Supreme Court opinion, by an en banc panel of the circuit, or by a controlling Act of Congress. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 463 (N.D.Cal.,1994) *See also United States v. Frank*, 956 F.2d 872, 882 (9th Cir.1991).This rule applies  even if the district court is  convinced that such authority is unwise, incorrect or was wrongly decided.  *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir.  2001). As stated in *Hart*:

> [b]ut precedent also serves a very different function in the federal courts today, one related to the horizontal and vertical organization of those courts. (Citation omitted). A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court. (footnote omitted). Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point is the law. If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect. Binding authority must be followed unless and until overruled by a body competent to do so

*Id* at 1170.

Fleming clearly holds that Covenant § 502(a)(2) cannot subvert the well defined parameters of sections 501(a) absent clear legislative intent. 837 F.2d at 406. There is not any clear legislative authority showing congressional intent that the commerce clause applies int eh Commonwealth or that Covenant § 502(a) incorporates the commerce clause. Indeed, The 9th Circuit relies on the **Analysis** to assist in discerning the meaning of the Covenant. *Northern Mariana Islands,* 399 F.3d at 1065. The **Analysis** does not mention or address the commerce clause or its applicability to the Commonwealth. This circumstance supports Fleming's application of the plain language rule which means the commerce clause does not apply in the Commonwealth and it can not be "back doored" or otherwise circumvented by Covenant § 502(a)(2). Thus, under analysis required by binding 9th Circuit authority, the commerce clause, like the 11th Amendment, does not apply in the Commonwealth.[4] This precludes, as a matter of law, the prosecution from proving the jurisdictional element of the Mann Act or 18 U.S. C. § 2314.

**B.    ACQUITTAL IS PROPER ON COUNT 5**

**1.    A SCHEME TO DEFRAUD WAS NOT PROVED**

A "scheme to defraud" within the meaning of the federal criminal statutes has been not proved because reasonable jurors could not find that a person of ordinary prudence would rely on the purported representations made in this case. *See United States v. Brown*, 79 F.3d 1550, 1559

---

[4]

This conclusion is not extraordinary in light of *Sakamoto v. Duty Free Shoppers*, 764 F.2d 1285(9th Cir. 1985).

(11th Cir. 1996). This is especially true given that Chi and Lian knowingly and willfully signed fraudulent documents for purposes of entering the Commonwealth.

Moreover, the motivating factor in Chi and Lian's travel was not any representation made to them but their knowingly and willingly signing fraudulent documents for purposes of entering the Commonwealth. *United States v. Myerson*, 18 F.3d 153, 164 - 165 (2nd Cir. 1994).

**2.    THE MONEY CLAIMED TO HAVE BEEN OBTAINED BY FRAUDULENT MEANS DID NOT MOVE IN COMMERCE**

The plain-language reading of the fraudulent travel statute shows that a defendant must fraudulently induce a person to travel across a state line with money and for purposes of fraudulently obtaining the money. *United States v. Steffen,* 251 F.3d 1273, 1276 (9th Cir. 2001). Indeed, the purpose for the fraudulent travel statute is to fill the void in the mail fraud statute. *Id* at 1277. *See United States v. Benson*, 548 F.2d 42, 46 n. 6 (2d Cir.1977). The congressional intent in passing the travel fraud statute was to prevent criminals engaged in fraud from evading prosecution merely by using a different means of transporting money, i.e. personal delivery. *Id.* The travel in this case was not for purposes of personal delivery of money pursuant to a fraudulent scheme.

In this case the prosecution's proof  was that Chi and Lian borrowed money in China and paid it to a recruiting company in China. There is no proof that the borrowed money traveled outside China or moved in commerce as that term is defined for purposes of the fraudulent travel statute. This precludes a determination that Zheng had violated the travel fraud statute.

Even more so, the payment of money occurred prior to any travel by Chi or Lian. In other

words, the alleged fraud had occurred prior to Chi and Lian traveling to the Commonwealth. This means the evidence is insufficient to support the conviction under the travel fraud statute. *See United States v. Snelling*, 862 F.2d 150 (8th Cir. 1988) (It is an essential element of the interstate transportation offense under section 2314 that the defendant had the intent to defraud at the time the victim crossed state lines as a result of the defendant's inducement). Nevertheless, to the extend, it is claimed that Chi and Lian traveled to Saipan knowing they would have to pay money once reaching the Commonwealth, the amount they paid was less than $5,000.00.

**II.     ACQUITTAL ON COUNTS 2 AND 3 IS PROPER**

Counts 2 and 3 involved the sex trafficking statute, 15 U.S.C. § 1591.

**A.     THE COURT LACKED SUBJECT MATTER JURISDICTION OVER THE SEX TRAFFICKING CHARGES**

As previously noted, Covenant § 105 governs the applicability of the sex trafficking statutes since they were enacted after January 9, 1978. *Richards*, 4 F.3d at 756.While Covenant § 105 allows the United States to enact laws applicable to the Commonwealth, such authority is constrained or limited by the "fundamental provisions of this Covenant, namely Articles I, II and III and Sections 501 and 805" which guarantee the Commonwealth the right of self government." *Richards*, 4 F.3d at 753 - 754; *A & E Pacific v. Saipan Stevedore*, 888 F.2d 68, 70 - 71 (9th Cir.1989). The 9th Circuit recognizes that a tension exists between § 105 and the Covenant's guarantee that the Commonwealth will have local self government. *Richards*, 4 F.3d at 752 - 754. *See A & E Pacific v. Saipan Stevedore*, 888 F.2d 68, 71 (9th Cir.1989). In addressing this tension, the 9th Circuit has held that a balancing of interests must be undertaken to

12

determine the applicability to the Commonwealth of laws enacted by Congress after January 9, 1978 which infringe upon the Commonwealth's right to self government. This balancing requires consideration of the federal interest to be served by the legislation at issue against the degree of intrusion into the Commonwealth's internal affairs. *Richards*, 4 F.3d at 754 - 755. While *Richards* holds that for purposes of Covenant § 105, the United States have an identifiable federal interest in the relevant legislation, it does explicitly articulate the level of federal interest that must be shown in order for the legislation to satisfy § 105. The law suggests that the federal interest must be compelling.

A compelling interest must be shown for laws or governmental conduct which implicate a fundamental right. *See Shapiro v. Thompson*, 394 U.S. 618, 627-35, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993), *United States v. Playboy Entertainment Group*, 529 U.S. 803, 813 and 817, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). The Commonwealth is not entitled to any lesser degree of protection from federal legislative authority which infringes, overrides or alters a fundamental provision of the Covenant or the Commonwealth's right to self government. Indeed, *Richards* supports this position in that in holding that the federal law at issue applied to the Commonwealth, the court recognized that based on the Covenant, the federal government had a substantial interest in the legislation which justified its application to the Commonwealth. 4 F.3d at 755. That circumstance does not exist in this case.

Pursuant to Covenant § 501 certain provisions of the United States Constitution are not extended to the Commonwealth. *Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1439 (9th Cir. 1997); *Hillblom*, 896 F.2d at 428. The Constitution provisions not

13

extended to the Commonwealth include the interstate commerce clause and the territorial clause. *Id*. Covenant § 103 vests the people of the Northern Mariana Islands with the right of the right of local self-government and the right to govern themselves with respect to internal affairs in accordance with a Constitution of their own adoption. See *Richards*, 4 F.3d at 753. Applying the balancing of interests to the statute at issue in this case, 18 U.S.C. § 1591, shows that the statute impermissively infringes upon the Commonwealth's right to self government and fundamental provisions of the Covenant.

Generally, prostitution is a local as opposed to federal crime. *See United States v. Washington,* 797 F.2d 1461, 1473 (9th Cir. 1986)[Prostitution in and of itself is not a federal crime]. 18 U.S.C. § 1591, therefore, federalizes the local crime of prostitution when it occurs under certain specific circumstances, one of which involves the use of foreign or interstate commerce. Thus, the 18 U.S.C. § 1591 federalizes a Commonwealth crime by use of the commerce clause which is not extended to the Commonwealth by Covenant § 501. It should also be noted that Covenant § 503 grants the Commonwealth sole jurisdiction over immigration of persons into the Commonwealth while Covenant § 603(a) establishes that the Commonwealth is outside the customs jurisdiction of the United States. Covenant §§ 502 and 603(a) effectively mean the United States lacks jurisdiction over the movement of people and goods between the CNMI and any place outside thereof. Moreover, the Commonwealth has its own criminal laws which address the conduct alleged in this case. Thus, the federal interests, if any, for applying 15 U.S.C. § 1591 does not outweigh the Commonwealth's interests in self government.

14

**B.    SEX TRAFFICKING WAS NOT PROVED BEYOND A REASONABLE DOUBT**

For the reasons set forth in Section 1(B)(1), *supra*, fraud was not proved beyond a reasonable doubt. Moreover, the evidence does not show that Chi or Lian were forced or coerced into traveling to Saipan or that they were forced or coerced into prostitution on October 4, 2004. Likewise, the evidence does not show that on October 4, 2004, Chi and Lian were threaten with legal process if they did not engage in prostitution. This precludes a conviction on the sex trafficking charges.

## CONCLUSION

The Covenant, which governs the relationship between the Northern Mariana Islands and the United States, does not extend the commerce clause to the Northern Mariana Islands. Pursuant to the Ninth Circuit's ruling  in *Fleming*, this circumstance results in the commerce clause applying in the Northern Mariana Islands and it can not be deemed applicable based on the incorporation of a federal statute. This necessitates an acquittal on the Mann Act  and travel fraud statute as the prosecution could not prove the essential jurisdictional element beyond a reasonable doubt. Acquittal is on the travel fraud statute is also required as the prosecution failed to prove travel for a fraudulent purpose beyond a reasonable doubt.

Similarly, acquittal is appropriate on the sex trafficking charges  as 18 U.S.C. § 1591 does not apply in the Commonwealth. Alternatively acquittal is proper as the prosecution did not prove all of the elements beyond a reasonable doubt.

Law Office of G. Anthony Long

By:/s/_____
         G. Anthony Long