Law Office of G. Anthony Long
P. O. Box 504970, Beach Road
San Jose, Saipan, MP 96950
Telephone No. (670) 235-4802
Facsimile No. (670) 235-4801

Attorney for Defendant Zheng, Ming Yan

### IN THE UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL ACTION NO. 05-00027 |
| ) | |
| Plaintiff ) | |
| ) | POST TRIAL MEMORANDUM |
| v. ) | SUPPORTING MOTION FOR |
| ) | NEW TRIAL |
| ZHENG MING YAN and LIU, CHANG ) | |
| DA ) | |
| ) | Date: Oct. 19, 2006 |
| Defendant ) | Time: 9:00 a.m. |
| _____ ) | |

FRCrP Rule 33 allows the court to vacate any judgment and grant a new trial if the interest of justice so requires[1].

I.   **THE FAILURE TO GIVE THE COVENANT RELATED INSTRUCTIONS REQUIRES A NEW TRIAL ON ALL COUNTS**

"A defendant is entitled to instructions relating to a defense theory for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Burt*, 410 F.3d 1100, 1103 (9th Cir. 2005). The failure to

---

[1] Zheng also incorporates the arguments set forth in the memorandum for acquittal filed herewith as additional basis for a new trial.

do so is basis for a new trial.

A theory of Zheng's defense to all of the charges concerned the commerce clause not applying to the Commonwealth. Zheng requested a jury instruction concerning Covenant § 501 which did not extend the commerce clause to the Commonwealth and that United States immigration laws did not apply to the entry of persons into the Commonwealth. The jury instruction supported Zheng's defense theory that the acts complained of did not affect foreign or interstate commerce within the meaning of the sex trafficking statute, 18 U.S.C. § 1591, the Mann Act, 18 U.S.C. 2421, and the foreign fraud statute, 18 U.S.C. § 2314. Not giving the instruction entitles Zheng to a new trial on all counts.

## II.    DUE PROCESS REQUIRES A NEW TRIAL ON COUNTS 2, 3, AND 5

## A.    THE PROSECUTION WRONGFULLY FAILED TO INVESTIGATE THE VERACITY OF CHI AND LIAN

When a prosecutor suspects its witness may offer false testimony, the prosecutor must at least investigate. *See Northern Mariana Islands v. Bowie*, 243 F.3d 1109(9th Cir.2001). This duty to investigate flows from the "constitutional obligation of the State and its representatives to collect potentially exculpatory evidence, to prevent fraud upon the court, and to elicit the truth." *Bowie,* 243 F.3d at 1117. Indeed, "[a] prosecutor cannot avoid this obligation by refusing to search for the truth and remaining willfully ignorant of the facts." *Bowie*, 243 F.3d at 1118 (9th Cir.2001). In other words, a prosecutor cannot turn a blind eye to the **manifest potential** for malevolent disinformation. *Id* at 1114. This means that a prosecutor cannot refuse to investigate the potentially exonerating evidence that its own witnesses were conspiring to commit perjury. *Id*

at 1118. Indeed, upon being put on such notice, a prosecutor cannot decline or decide not to investigate in order to avoid developing or unconvering "evidence or information that would either hurt their case or damage the credibility of their conniving witnesses." *Id* at 1118. Likewise, a prosecutor cannot press forward with testimony that was **possibly false** on the basis that he believes the defendant is, in fact, guilty. *See Bowie*, 243 F.3d at 1118

In this case, Chi, Xiumei ("Chi") and Lian Wei ("Wei") each had represented or told Agent Berry that after their initial meeting with him in June, 2005, they ceased engaging in prostitution activities. Three days before trial, on August 11, 2006, the prosecution informs Zheng that it had learned that day that Chi had engaged in prostitution outside the Tea House 4 to 6 times in July, 2005 and August, 2005 and Lian had engaged in prostitution outside the Tea House on "appromixiately 10 occasions in July, 2005 and August, 2005"[2]. Although Agent Berry at first testified that the principal witnesses lying to him about engaging in prostitution after the initial meeting was not material, he eventually admitted that the lies were material given the elements of the sex trafficking charges. Thus, prior to trial the prosecution was aware that their principal witnesses had lied about material facts concerning their engaging in prostitution. This raises the distinct possibility that Chi and Lian were lying about their not being prostitutes in China and that Zheng forced or coerced them into prostitution. *See e.g. Bowie*, 243 F.3d at 1114 - 1125. Yet, the prosecution did not take any steps to determine whether their principal witnesses were lying about their activities in China and Zheng forcing or coercing them into prostitution.

Even more so, this circumstance shows the Chi and Lian were perfectly willing to go to trial knowing that they were deceiving the prosecution about their prostitution activities. Indeed,

---

[2] A copy of the August 11, 2006 letter is attached hereto.

the trial in this case was originally scheduled for May 29, 2006 but was continued on May 26, 2006. Since the prosecution did not learn of Chi and Lian's deceit until August 11, 2006, they would have gone to trial in May not aware of Chi and Lian's deceit. Most telling, however, is that Chi and Lian lacked respect for this court and the prosecution as they were ready to go to trial in May with the prosecution laboring under a deception concerning their prostitution activities. This raises serious questions about Chi and Lian's veracity and their willingness to lie, apparently even in court. Furthermore, this knowledge when combined with the fact that Chi and Lian knowingly and willfully signed false documentation under the penalty of perjury simply to be able to enter the Commonwealth, was more than sufficient to put the prosecution on notice that it had to investigate the veracity of Chi and Lian's allegations relating to sex trafficking and travel fraud.

It is clear from the record that upon learning of Chi and Lian's material deception and criminal activity[3], the prosecution did nothing. Instead, the prosecution pressed forward with trial or simply turned "a blind eye" to the distinct potential of "malevolent disinformation" by their principal witnesses. Such conduct is contrary to due process and requires a new trial. *Bowie*, supra.

**B.  THE CONVICTIONS ON COUNTS 2, 3, AND 5 WERE SECURED BY FALSE IMPRESSIONS AND FALSE TESTIMONY**

It is fundamentally unfair and a due process violation for a prosecutor to present perjured or false testimony to the jury. *United States v. LaPage*, 233 F.3d 488, 491 (9th Cir. 2000); *Hayes*

---

[3] The only reason the prosecution learned of Chi and Lian's material deception was due to Zheng's Exhibits A and B.

*v. Brown*, 399 F.3d 972 (9th Cir. 2005)[4]. Similarly, it is fundamentally unfair and a due process violation when the prosecution "although not soliciting false evidence, allows it to go uncorrected when it appears." *Id*. See *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Hayes*, 399 F.3d at 984.

A prosecutor's duty to correct false testimony by its witnesses is not discharged merely because defense counsel knows, and the jury may figure out, that the testimony is false. *LaPage*, 233 F.3d at 492. Instead, the prosecution possesses a constitutional duty " to correct the false impression of the facts." *Id*. These prosecutorial duties are not limited to circumstances of actual knowledge of falsity, but they equally apply when the prosecution is on notice of the distinct possibility that testimony of a prosecution witness is false. *See Napue,* 360 U.S. at 269-70. As the Ninth Circuit sitting en banc has stated:

> [t]he authentic majesty in our Constitution derives in large measure from the rule of law-principle and process instead of person. Conceived in the shadow of an abusive and unanswerable tyrant who rejected all authority save his own, our ancestors wisely birthed a government not of leaders, but of servants of the law. Nowhere in the Constitution or in the Declaration of Independence, nor for that matter in the Federalist or in any other writing of the Founding Fathers, can one find a single utterance that could justify a decision by any oath-beholden servant of the law to look the other way **when confronted by the real possibility** of being complicit in the wrongful use of false evidence to secure a conviction in court.

*Hayes v. Brown*, 399 F.3d 972, 987 (9th Cir. 2005)(en banc) citing *Bowie*, 236 F.3d at 1096.(emphasis added). It should also be noted that the fact that the false evidence presented dealt only with credibility does not change the materiality calculus. *Hayes*, 399 F.3d at 986.

Chi's direct examination occurred on August 16, 2005. On direct examination Chi

---

[4]The 9th Circuit apparently does not differentiate between perjury and false testimony. *Hayes,* 399 F.3d at 981 - 984.

testified that she was moved to Guam for safety reasons. At the conclusion of the trial that day Zheng brought up that Chi's testimony regarding her being moved to Guam for safety reasons was false. The court instructed the prosecution to provide Zheng with information regarding her safety. The information provided by the prosecution did not contain any information that Chi or Lian were moved to Guam for safety concerns. On August 17, 2006, on cross examination Chi specifically testified that FBI Special Agent James Berry informed her she was being moved to Guam for safety. She testified that he told her this at the hotel where she was staying in the presence of Wang Lan Jun, Wang Bin, and Lian Wei around 2:00 p.m. one afternoon. She did not remember the precise date. Chi did say, however, the meeting took place after she and Chi moved to the hotel. In a hearing outside of the jury Agent Berry stated that he did not state Chi was being moved to Guam for her safety. Instead, he testified that he may have and probably did inform her that relocating to Guam would address or alleviate her alleged concerns for safety. Indeed, Agent Berry never prepared a FBI 302 concerning all safety concerns of Chi or Lian.

The charges in this case include sex trafficking which involves elements of force and coercion. False testimony that the government moved accusers to Guam for safety reason's is extremely material and crucial as it supports the allegations of force and coercion. Such false testimony and false impression of the facts were left uncorrected which had to taint the jury with respect to the force and coercion elements. Due process forbids a conviction from resting on such a false impressions. *See Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957).

**III.    EVIDENTIARY RULINGS REQUIRE A NEW TRIAL ON COUNTS 2, 3, AND 5.**

A.      **EXCLUDING ZHENG'S EXHIBITS A AND B NECESSITATES A NEW TRIAL**

The two sex trafficking charges are the most serious charges against Zheng. It is Zheng's theory and defense to those charges that neither Chi Xiumei nor Lian Wei engaged in commercial sex acts by means of coercion, fraud or force. The evidence which the prosecution seeks to exclude shows that in late August, 2005 and September, 2005, shortly after Zheng's arrest and closure of the Tea House, Chi and Lian were prostituting themselves on the streets of Garapan, Saipan.

1.      **EXCLUDING ZHENG EXHIBITS A AND B DENIED ZHENG A FAIR TRIAL AND THE RIGHT TO PRESENT AN ADEQUATE DEFENSE**

The erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense. *Chia v. Cambra*, 360 F.3d 997, 1003 (9th Cir.2004). Whether such rights are violated is determined by examination of five factors. *Id* at 1004. "These factors include: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense." *Id*. It cannot be disputed that video taken days after Zheng's arrest showing Chi and Lian loitering in front of a porno shop "working" a side street in Garapan is probative, reliable, capable of being evaluated by the jury, is not cumulative and constitutes a major part of the defense to the sex trafficking charges as well as the fraudulent transportation charge. The evidence would allow the jury to evaluate for themselves whether Chi and Lian were victims of sex trafficking or fraudulent

travel. Exclusion of the evidence denied Zheng a fair trial and the right to present a defense. *Id*.

**2.    EXCLUDING ZHENG EXHIBITS A AND B DENIED ZHENG THE RIGHT TO CONFRONT CHI AND LIAN**

The Confrontation Clause requires that a defendant be given an opportunity for effective cross-examination. *Olden*, 488 U.S. at 231, 109 S.Ct. 480. The 9th Circuit has "repeatedly held that when the Government's case turns on the credibility of a witness, then defense counsel ⋯ must be given a maximum opportunity to test the credibility of the witness." *Burr v. Sullivan*, 618 F.2d 583, 587 (9th Cir.1980).  For sure, when the government relies on witnesses who have themselves engaged in criminal activity and whose record for truthfulness is far from exemplary, then full disclosure of all relevant information concerning their activities through cross-examination and otherwise is indisputably in the interests of justice. See *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004); *United States v. Brooke*, 4 F.3d 1480, 1489 (9th Cir.1993). See *DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001)[Where a defendant's guilt hinges largely on the testimony of a prosecution's witness, the erroneous exclusion of evidence critical to assessing the credibility of that witness violates the Constitution].

Exhibits A and B would have assisted in providing full disclosure of Chi and Lian's activities as it would have allowed the jury to observe or watch Chi and Lian's demeanor, behavior, and attitude while plying their trade. This is important since it is claimed that they: 1) were scared and afraid , 2) were forced or coerced into prostitution,  3) were reluctant to engage in prostitution, and 4) were not prostitutes in China.

3.  **EXCLUDING ZHENG'S EXHIBITS A AND B DEPRIVED HER OF THE ABILITY TO IMPEACH HER ACCUSERS**

Zheng has the right to introduce evidence to impeach the credibility of her accusers. *See United States v. Cruz-Garcia*, 344 F.3d 951, 955 n. 3 (9th Cir.2003). The evidence would have served to impeach Chi and Lian's credibility concerning whether they were willing participants in commercial sex acts.

4.  **CHI AND LIAN ADMITTING TO ENGAGING IN PROSTITUTION IN JULY, 2006 AND AUGUST, 2006 DID NOT RENDER EXHIBITS AND AND B INADMISSIBLE**

After becoming aware of the existence of Zheng's Exhibit A and B, Chi and Lian admitted they continued to engage in prostitution after contacting Agent Berry and after Zheng's arrest. However, the only admitted to prostitution in July, 2005 and August, 2005, Exhibit A and B contain footage from September, 2005. Even more so, their admission is insufficient to render the exhibits inadmissible. *See Old Chief v. U.S.*, 519 U.S. 172, 186, 117 S.Ct. 644, 653 (1997).

In Old Chief, the defense sought to prevent the admission of a prior conviction by offering to stipulate to or admit the conviction. The government asserted that a stipulation or admission would not carry the same evivalent value as the direct evidence. *Id*. In denying Old Chief's challenge to the admission of the conviction, the Supreme Court ruled that a "criminal defendant his appeal challenging the admission of the evidence, the Supreme Court may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id*, 519 U.S. at 186 - 187, 117 S.Ct. at 653. In so ruling, the Court observed the general principal that a **party** is to be allowed "'to present to the jury a picture of the events

relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.' " *Id*, 519 U.S. at 186 - 187, 117 S.Ct. at 653 quoting *Parr v. United States*, 255 F.2d 86, 88 (5th Cir. 1958).

Old Chief's reasoning and logic applies with equal force to Zheng's Exhibits A and B. Zheng has the right to present the most powerful evidence available to support her defense theory that Chi and Lian were not fraudulently induced, forced or coerced into prostituion. By the same token, the prosecution could not dilute, diminish, or otherwise defuse the evidence by admitting to engaging in prostitution in July, 2005 and August, 2005.

**B.   ADMITTING EXHIBITS 1, 2, and 3 AND THEIR TRANSLATIONS REQUIRE A NEW TRIAL**

**1.   ADMITTING EXHIBIT 1 WAS AN ABUSE OF DISCRETION**

The prosecution's exhibit one purports to be flyer distributed by a recruiting agency in the Peoples Republic of China ("PRC" or "China") which advertises employment opportunities on Saipan with Greate Corporation. The exhibit was not properly authenticated pursuant to FRE Rule 901(a). *Casey v. Phelan Insurance Agency, Inc.*, 431 F.Supp.2d 888, 891-892 (N.D.Ind. 2006). Authentication of a document relates only to whether the document originates from its alleged source. *Id* at 891. The prosecution did not call as a witness a person from the recruiting company in China which purportedly issued or posted the flyer. Without such testimony, the flyer could not be authenticated for purposes of admissibility. *Id* at 891 - 892. Even more so, Zheng's constitutional right to confrontation precludes someone other than a knowledgeable employee or representative of the company which posted or distributed the flyer from authenticating the

document. *See e. g. United States  v. Hagege,* 437 F.3d 943, 958 (9th Cir. 2006).

     The flyer is also  hearsay, and without the proper testimony it cannot be deemed a business record or come within any other hearsay exception. *See United States v. Chu Kong Yin*, 935 F.2d 990, 996 - 997 (9th Cir. 1991). Although the prosecution contends the document is not hearsay as it shows the falsity as opposed to the truth of the statements, *see  Anderson v. United States*, 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974), this argument fails as the prosecution uses Exhibit 1 as substantive evidence from which the jury could infer Zheng's guilt. *See Lyle v. Koehler*, 720 F.2d 426, 433 n. 11 (6th Cir. 1983). Additionally, even if this rule is applicable, then Exhibit 1 still had to be authenticated as the identity of the declarant had to be established. *See e.g. United States  v. Knigge*, 832 F.2d 1100, 1108 (9th Cir 1987). This was not done as neither Chi nor Lian saw any signature on Exhibit 1 in China and the government did not introduce any testimony from the recruiting agency in China. Furthermore, the prosecution contends only certain parts of the document is false and not the entire document. Also,

     Lastly, the best evidence rule requires the prosecution to produce the original of the flyer. FRE Rule 1002.

     The fact that prosecution witnesses testified that Zheng's signature was on the bottom of the document, does not render the document admissible. Chi and Lian both testified that Zheng's signatre was not on the document they saw in China. They said they first saw Exhibit 1 , which contains a signature the witnesses identified as Zheng's, on Saipan. This means Exhibit 1 was not the document they saw in China and it could not, therefore be the document they claimed to have relied on in deciding whether to pursue employment on Saipan.

     Since Exhibit 1 is inadmissible, the translation of the exhibit is also inadmissible.

### 2.　　ADMITTING EXHIBIT 2 WAS AN ABUSE OF DISCRETION

Exhibit 2 purports to be a contract or agreement between Great Corporation and a PRC company. First, it is unclear which law controls the document. Indeed, the first determination in being able to decide whether the document is an agreement or contract requires determining whether Commonwealth or PRC law controls the document. Since the prosecution did not call a PRC legal expert to testify about the document, it appears the prosecution contends the document is governed by Commonwealth law. Assuming, but without conceding that Commonwealth law controls the document, then it is inadmissible.

Exhibit 2 is not signed by the purported PRC company. Thus, there is not any basis for showing that an agreement or meeting of the minds existed between Great Corporation and the PRC company. Similarly, Lian testified that the document was not signed by anyone when she saw it in China. Also, without the testimony of a knowledgeable employee of the PRC company, the document cannot be properly authenticated for purposes of FRE Rule 901(a).

The document is also hearsay, and was not shown to be a business record or come within any other hearsay exception. *See Chu Kong Yin,* 935 F.2d at 996 - 997. Although the prosecution contends the document is not hearsay as it shows the falsity as opposed to the truth of the statements, *see Anderson,* 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974), this argument fails as the evidence did not reveal any content in Exhibit 2 to be false. Additionally, the rule is inapplicable as the prosecution uses Exhibit 2 as substantive evidence from which the jury could infer Zheng's guilt. *See Lyle, supra.* Also, even if this rule is applicable, then Exhibit 2 still had to be authenticated as the identity of the declarant had to be

established. *See e.g. United States v. Knigge*, 832 F.2d 1100, 1108 (9th Cir 1987). This was not done. Zheng's constitutional right to confrontation precludes someone other than a knowledgeable employee or representative of the company which posted or distributed from authenticating the document. *Seee. E. g. United States v. Hagege,* 437 F.3d at 958.

Lastly, the best evidence rule requires the prosecution to produce the original of the document signed by the PRC company. FRE Rule 1002. Even more so, Zheng's constitutional right to confrontation precludes someone other than a knowledgeable employee or representative of the company which posted or distributed from authenticating the document. *Seee. g. United States v. Hagege,* 437 F.3d at 958.

Since Exhibit 2 is inadmissible, the translation of the document is also inadmissible.

### 3.  ADMITTING EXHIBIT 3 WAS AN ABUSE OF DISCRETION

Exhibit 3 purports to be a contract or agreement between Great Corporation and Chi. First, it is unclear which law controls the document. Indeed, the first determination in being able to decide whether the document is an agreement or contract requires determining whether Commonwealth or PRC law controls the document. Since the prosecution did not call a PRC legal expert to testify about the document, it appears the prosecution contends the document is governed by Commonwealth law. Assuming, but without conceding that Commonwealth law controls the document, then it is inadmissible.

Exhibit 3 is not signed by Greate Corporation. Thus, there is not any basis for showing that an agreement or meeting of the minds existed between Great Corporation and Chi concerning Exhibit 3. Also, without the testimony of a knowledgeable employee of the PRC

company or Greate Corporation, the document cannot be properly authenticated for purposes of FRE Rule 901(a). Zheng's constitutional right to confrontation precludes someone other than a knowledgeable employee or representative of the company which posted or distributed from authenticating the document. *Seee. g. United States  v. Hagege,* 437 F.3d at 958.

The document is also  hearsay, and was not shown to be a business record or come within any other hearsay exception. *See Chu Kong Yin*, 935 F.2d at  996 - 997.  Although the prosecution contends the document is not hearsay as it shows the falsity as opposed to the truth of the statements, *see  Anderson,* 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974), this argument fails as the evidence did not reveal any content in Exhibit 2 to be false. Additionally, the rule is inapplicable as the prosecution uses Exhibit 2 as substantive evidence from which the jury could infer Zheng's guilt. *See Lyle, supra.* Also, even if this rule is applicable, then Exhibit 2 still had to be authenticated as the identity of the declarant had to be established. *See e.g. United States  v. Knigge*, 832 F.2d 1100, 1108 (9th Cir 1987). This was not done.

Lastly, the best evidence rule requires the prosecution to produce the original of the document. FRE Rule 1002. For instance, Lian claimed she had a copuy of the document signed by her in China. It was not produced at trial.

 Since Exhibit 3 is inadmissible, the translation of the document is also inadmissible. Alternatively, the document should have been limited in its application to Chi. It was not. On this basis, at a minimum,  a new trial on counts 2 and 3 with respect to Lian is necessary.

IV. **THE CUMULATIVE EFFECT OF THE ERRORS REQUIRE A NEW TRIAL**

Cumulative error necessitating reversal exists when no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, but the cumulative effect of errors prejudice a defendant. *Killian v. Poole,* 282 F.3d 1204, 1211 (9th Cir.2002); *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

All of the errors identified in Zheng's post trial motions had a cumulative effect of unduly prejudicing Zheng thereby entitling her to a new trial. *Id*.

## CONCLUSION

The court should grant Zheng a new trial.

Law Office of G. Anthony Long

By: /s/_____
　　　G. Anthony Long