LEONARDO M. RAPADAS
United States Attorney
TIMOTHY E. MORAN
Assistant U.S. Attorney
DISTRICT OF THE NORTHERN
   MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP  96950
Telephone:  (670) 236-2982
Fax:            (670) 236-2985

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. <u>05-00027</u> |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S MEMORANDUM IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| v. | ) | MOTIONS FOR JUDGMENT OF |
| | ) | ACQUITTAL AND NEW TRIAL |
| ZHENG, MING YAN, | ) | |
| | ) | Date:  November 22, 2006 |
| Defendant. | ) | Time:  9:00 a.m. |
| | ) | |
| | ) | |
| | ) | |
|  _____ | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Leonardo M. Rapadas, United States Attorney, and Timothy E. Moran, Assistant United States Attorney, and hereby files its memorandum in opposition to the defendant's motions for judgment of acquittal and a new trial.

I.     THE DEFENDANT IS NOT ENTITLED TO A JUDGMENT OF ACQUITTAL.

   A.     <u>Standard</u>

In deciding a motion under Fed. R. Cr. P. 29(c) for judgment for acquittal after the jury returned verdicts of guilty, the Court "must look to all the evidence, and, when taken in the light most favorable

to the government, determine whether 'a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" United States v. Guthrie, 814 F.Supp. 942, 944 (E.D. Wash. 1993), quoting United States v. Alston, 974 F.2d 1206, 1210 (9th Cir. 1992). The Court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." United States v. Rojas, 554 F.2d 938, 943 (9th Cir. 1977), quoting United States v. Nelson, 419 F.2d 1237, 1242 (9th Cir. 1969).

    B.    The Covenant Provides Jurisdiction Over Counts Four (18 U.S.C. § 2421, the Mann Act), Count Five (18 U.S.C. § 2314, Foreign Transportation For Purposes of Fraud) and Counts Two and Three (18 U.S.C. § 1591, Sex Trafficking).

        1.    Section 502(a) Provides Subject Matter Jurisdiction Over Counts Four and Five.

The Covenant between the CNMI and United States provides for the applicability of federal criminal law to the CNMI. As laws of general application to the several states and Guam, the Mann Act and § 2314 apply to the CNMI through § 502(a) of the Covenant To Establish A Commonwealth of the Northern Mariana Islands in Political Union with the United States (the "Covenant").

The defendant previously raised this identical argument with respect to the Mann Act charge in a pre-trial motion to dismiss. The Court denied the motion in a written Order dated November 8, 2005. As the argument with respect to § 2314 is the same, the law of case doctrine requires the Court to deny the motion as to both Count Four and Five. The government repeats its previous argument here.

The defendant argues that the Mann Act and § 2314 do not apply in the CNMI because their "jurisdictional hook" is the Commerce Clause, U.S. Const. art. III, § 8, cl. 3, which does not apply to the CNMI. The flaw in the defendant's argument is that she assumes that the criminal statutes must rely on the same source of authority in the CNMI as in the several states, i.e., the Commerce Clause, instead of directly on the Covenant. In other words, the defendant argues that the Covenant must import the Commerce Clause, and then the Commerce Clause must authorize a specific statute, before the statute can apply in the CNMI. This additional step contradicts the explicit language of the Covenant, which itself provides the "jurisdictional hook" for the statutes.

1  "[T]he authority of the United States towards the CNMI arises solely under the Covenant."

2  United States *ex rel.* Richards v. De Leon Guerrero, 4 F.3d 749, 754 (9th Cir. 1993), quoting Hillblom v.

3  United States, 896 F.2d 426, 429 (9th Cir. 1990).  Federal criminal law became applicable to the CNMI

4  along with the vast majority of other federal statutes by operation of Covenant § 502(a)(2).  That section

5  provides in relevant part that:

6      (a) The following laws of the United States in existence on the effective date of this Section and
    subsequent amendments to such laws will apply to the Northern Marianas Islands, except as
7      otherwise provided in this Covenant...

8          (2) those laws not described in paragraph (1) which are applicable to Guam and which
        are of general application to the several states as they are applicable to the several States;
9          and . .

10  Covenant § 502(a)(2); see also Richards, 4 F.3d at 756.  The Mann Act and § 2314 both meet the two

11  prongs of § 502(a)(2): they apply to Guam and the several states.  See United States v. Taitano, 442 F.2d

12  467, 469 (9th Cir. 1971) (affirming conviction under Mann Act in District Court of Guam).  Accordingly,

13  the Covenant itself provides for the applicability of the Mann Act to the CNMI.

14      Precedent strongly supports this position.  See e.g., United States v. Du Bo, 1997 WL 33630795,

15  *1 (D.N.M.I. 1997), rev'd on other grounds 186 F.3d 1177 (9th Cir. 1999); Fleming v. Department of

16  Public Safety, 837 F.2d 401, 404-05 (9th Cir. 1988).  Fleming, on which the defendant relies,

17  distinguished a Constitutional provision, which is governed by Covenant § 501(a), from a statute of

18  general application.  837 F.2d at 405.  In addition to finding that the Eleventh Amendment did not apply

19  to the CNMI, Fleming held that "[b]ecause [42 U.S.C.] section 1983 is applicable by its terms and

20  because it is applicable to Guam and also to the states, we find that section 1983 applies to the

21  Commonwealth."  Id. (citations omitted).  The Ninth Circuit did not look to whether Congress's

22  authority to legislate § 1983 as to the several states also applied to the CNMI; it simply analyzed the

23  statute under § 502(a)(2)'s two prong test.[1]  Finally, the fact that an element of both the Mann Act and §

---

24  

25      [1] Further examination of § 1983 reveals that the Ninth Circuit has adopted the straight "Covenant
Test" position, not the "Covenant plus Commerce Clause Test" position espoused by defendant.

1  2314 requires interstate or foreign commerce demonstrates that they do not interfere with intraterritorial matters and are consistent with § 502. See Marianas Political Status Commission, Section-by-Section Analysis of the Covenant To Establish A Commonwealth of the Northern Mariana Islands, 53 (Feb. 15, 1975) [hereinafter, Section-by-Section Analysis] (noting that the "result of [§ 502(a)(2)] will be the application of a wide variety of federal laws to the Northern Marianas, selected because of their applicability to Guam and to the States").

    2.  Section 105 Provides Subject Matter Jurisdiction Over Counts Two and Three.

Section 105 of the Covenant provides authority for 18 U.S.C. § 1591, which was enacted after 1978. Under § 105, "the United States may enact legislation in accordance with its constitutional processes which will be applicable to the Northern Mariana Islands," so long as such legislation applies to the "several States". It is undisputed that § 1591 applies equally to the several states and, thus, to the CNMI.

Nevertheless, the Ninth Circuit also "interpret[s] the *first sentence* of Section 105 to mean that the United States must have an identifiable federal interest that will be served by the relevant legislation." Richards, 4 F.3d at 754 (emphasis added).[2] Contrary to the defendant's assertion, the government need not show a compelling interest, merely an "identifiable" one. In any event, the government does have a compelling interest in stopping sex trafficking, which is a form of human

---

Congress enacted § 1983, which was found applicable to the CNMI, pursuant to its authority under Section 5 of the Fourteenth Amendment ("The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."). However, Covenant § 501(a) extends *only Section 1*, not Section 5, of the Fourteenth Amendment to the CNMI. Accordingly, by defendant's argument, § 1983 should not apply in the CNMI; yet Fleming clearly holds otherwise. 837 F.2d at 404-05; see also Hillblom, 896 F.2d at 431 n.3 ("Congress did not inten[d] to govern the CNMI through the territorial clause or the commerce clause").

[2]Richards specifically rejected the contention that the *second sentence* of § 105 carves out an area of "local affairs" immunity. 4 F.3d at 755. In fact, the "right to self government" guarantee of the second sentence of § 105 means only that those named provisions of the Covenant itself may not be amended without the approval of the United States and CNMI; it does not limit federal legislation in any other way. See Section-by-Section Analysis at 16.

4

trafficking and slavery. In fact, it is among the Department of Justice's top priorities. See <u>Attorney General's Annual Report to Congress on U.S. Government's Activities to Combat Trafficking in Persons Fiscal Year 2005</u>, found at http://www.usdoj.gov/ag/annualreports/tr2005/agreporthumantraficing2005.pdf.

<u>Richards</u> balanced the government's interest against the "degree of intrusion into the internal affairs of the CNMI." 4 F.3d at 755. The *actus reus* for § 1591 must involve interstate or foreign commerce, so the statute governs interstate or foreign matters and not the internal affairs of the CNMI. It also does not criminalize prostitution, as the defendant contends. It criminalizes trafficking for purposes of prostitution, which remains an exclusively local offense. Accordingly, both § 105 and <u>Richards</u> approve the applicability of § 1591 to the CNMI.

    C.    <u>The Government Presented Sufficient Evidence For Conviction On Count Five.</u>

        1.    <u>The Government Proved A Scheme To Defraud.</u>

The defendant argues that the government did not prove a scheme to defraud because the jury could not reasonably find that a person of ordinary prudence would rely on the defendant's representations. In the first place, the government does not have to prove that the scheme would have defrauded an objectively reasonable person; the defendant's sole citation to the Eleventh Circuit does not state the law of the Ninth. Nevertheless, the jury could reasonably have found that a prudential person would have relied on the defendant's representations. In particular, both Lian and Chi testified that they demanded to see the defendant's promises in writing before agreeing to come to Saipan and that they each made several trips to the recruiter's to verify the offer. These steps demonstrate that the actual reliance here was objectively reasonable.

        2.    <u>The Lost Money Need Not Move In Foreign Commerce.</u>

The defendant contends that the money defrauded from Lian and Chi must have traveled in foreign commerce. The statute clearly states that it is a crime to "transport[], or cause[] to be transported, or induce[] any *person or persons to travel in, or to be transported* in interstate or foreign commerce...". 18 U.S.C. § 2314 (emphasis added). Several other reasons demonstrate that the

5

defendant's reading is incorrect. First, a completely different section of the statute criminalizes the transportation of actual goods or money. Second, the government need not prove that the victim suffered any actual loss so long as it proved that defendant intended to defraud the victims. See United States v. Utz, 886 F.2d 1148, 1151 (9th Cir. 1989). If the government does not need to prove that the victim suffered an actual loss, it need not prove that the victim traveled with any money. Finally, United States v. Steffen does not require that the defrauded person travel with money. Steffen held that the person induced to travel could be the agent of the actual fraud victim; it found that agency existed in part because victim entrusted the agent with the money. 251 F.3d 1273, 1276 (9th Cir. 2001). In this case, the government was required to prove that the defendant caused or induced Lian and Chi to travel to Saipan in furtherance of her scheme to defraud. The evidence readily showed that this happened.

II.     THE DEFENDANT IS NOT ENTITLED TO A NEW TRIAL.

    A.    Standard of Review

Under Fed. R. Crim. P. 33, the Court may grant a motion for new trial only if required in the interests of justice. However, the burden of justifying a new trial rests on the defendant. United States v. Shaffer, 789 F.2d 682, 687 (9th Cir. 1986). The final decision whether to grant a new trial lies within the discretion of the Court. United States v. Powell, 955 F.2d 1206, 1209 (9th Cir. 1992).

    B.    The Court Did Not Improperly Fail To Instruct The Jury On The Covenant.

The defendant raised an objection to subject matter jurisdiction prior to trial, which the Court denied. As solely a legal matter, there was no reason to instruct the jury on it. Furthermore, the defendant presented no evidence regarding the Covenant, so there were no facts on which to instruct the jury. Finally, the instructions properly required the jury to find a foreign commerce element on Counts Two, Three, Four and Five. Accordingly, the Court properly instructed the jury.

1   C.   Due Process Does Not Require A New Trial On Counts Two, Three and Five.

2       1.   The Government Did Not Fail To Investigate Chi and Lian.

The defendant next argues that the government failed to investigate its witness Chi and Lian. Specifically, because the government learned for the first time just before trial that Chi and Lian engaged in prostitution in July and August, 2005, the defendant posits that Chi and Lian lied about not being prostitutes in China prior to October, 2004. The defendant argues that the government failed to investigate this fact, which is not true and lacks any support in the record.

The defendant makes a leap which neither logic nor the facts support. First, the fact that Chi and Lian engaged in prostitution in July and August, 2005, has no bearing on the elements of the charges here. The crimes of sex trafficking and travel fraud were complete as of October 4, 2004, approximately nine months before the prostitution which took place.[3] Second, prostitution after the fact proves nothing about the state of mind of Chi and Lian in October, 2004, because it was attributable to completely different circumstances in 2005. Lian and Chi testified that they had no money, no friends, no family, no way to work in the CNMI legally and literally no other options. Furthermore, they had already been forced to engage in prostitution by the defendant, so they had already suffered the harmful consequences of prostitution. Accordingly, the facts of July and August, 2005, simply do not support the leap that they must necessarily have been prostitutes in China. Third and finally, the defendants questioned Lian and Chi exhaustively over several days on whether they were prostitutes in China, which they denied. Federal Rule of Evidence 608(b) would have prohibited the defendant from introducing any extrinsic evidence concerning prostitution in China.

The defendant's assertion that the government failed to investigate the case, including the veracity of its witnesses, is also false. The government investigated the case exhaustively and disclosed

---

[3] Agent Barry's admission of materiality, taken out of context, proves nothing. Just as an FBI agent does not make the determination of guilt, he also cannot supplant the Court's or the jury's determination of materiality.

7

1  over 3,000 pages of information to the defendants. With regard to Chi and Lian, the government
2  corroborated their stories with documents, government records and numerous independent witnesses.
3  As the testimony at trial demonstrated, the government simply was not able to get information out of the
4  People's Republic of China, which does not enjoy normal diplomatic relations with the United States – a
5  point that defendant argued to the jury. All of this investigation met the government's duty under
6  Brady.

               2.     The Government Did Not Solicit False Testimony.

8  The defendant contends that the government solicited, and then failed to correct, false testimony
9  from Chi regarding the reason for moving her to Guam in December, 2005 (again, over one year after
10 the crimes were committed). However, there was no false testimony from Chi at trial and, thus, no
11 violation of due process.

12 Chi testified at trial that she believed that the FBI moved her to Guam for her own safety and
13 that she recalled Agent Barry instructing her that she was being moved for her safety. Chi also testified
14 that she feared for her safety from the defendant. Agent Barry testified that the FBI did not move Chi to
15 Guam *primarily* for her safety, although it did have the result of making her safe from any potential
16 threats. Furthermore, Agent Barry testified that he probably informed Chi in response to her safety
17 concerns that moving her to Guam would make her safer. Accordingly, Chi's testimony was
18 inconsistent, not false. As the Court found in its ruling on the defendant's motion for an instruction to
19 the jury, there is a huge difference between fasle testimony and an inconsistency. An inconsistency
20 actually helps the defendant, as it may be – and was – argued to the jury. For the Court to find this
21 testimony false would usurp the jury's determination of credibility, which was its exclusive province.
22 Rojas, 554 F.2d at 943.

23 United States v. LaPage does not apply to the facts here for two reasons. First, LaPage involved
24 not an inconsistency but a clear and compelling case of falsehood, where the witness contradicted a
25 prior statement under oath in a prior trial of the same case. 233 F.2d 488, 490 (9th Cir. 2000). Second,

1  the government did not commit misconduct because it cleared up what may have the misimpression that
2  safety was the *sole* reason for her to go to Guam. Id. at 492. In fact, the defendant was more interested
3  in committing Chi to the what she contends is false testimony, as witnessed by the repeated objections to
4  the government's attempt to clear up any false impression. The current case more closely resembles
5  United States v. Shaw, 829 F.2d 714, 717 (9th Cir. 1987), where the court found that a government
6  witness accused of offering false testimony was confused rather than intentionally dishonest. Since the
7  government acted promptly to resolve what may have been inconsistent testimony, there has been no
8  misconduct. See United States v. Olano, 62 F.3d 1180, 1196 (9th Cir. 1995) (no error where government
9  moved promptly to repudiate alleged perjury).

     D.     The Exclusion of Defendant's Exhibits A and B Does Not Necessitate A New Trial.

          1.     Exclusion Did Not Deny The Defendant A Fair Trial.

12  The Court properly excluded the defendant's Exhibits A and B as irrelevant under Fed. R. Evid.
13  402 because the videos, taken nearly a year after the crimes were committed, did not tend to prove any
14  admissible fact. Defendant suggests a five factor test for the violation of the defendant's fair trial rights,
15  including the "(1) probative value of the excluded evidence on the *central issue*; (2) its reliability; (3)
16  whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or
17  merely cumulative, and (5) whether it constitutes a major part of the attempted defense." Chia v.
18  Cambra, 360 F.3d 997, 1003 (9th Cir. 2004) (emphasis added). Exhibits A and B fail this five part test.
19  First, they are not probative to the central issue of this case: what happened on October 3, 2004.
20  Second, they do not reliably show what the defendants claim, that Chi and Lian were prostituting
21  themselves. In fact, "[t]here is absolutely no evidence that either of the two victim-witnesses was
22  engaging in prostitution" in the videos. Order Granting Plaintiff's Motion In Limine To Exclude
23  Evidence, dated Aug. 14, 2006 [hereinafter "Order in Limine"], at 3. Third, the exhibits were not
24  capable of evaluation by the jury, as they carried a "certainty of unfair prejudice [and] confusion of the
25  issues". Id. at 2. Fourth, the Exhibits would have been merely cumulative to the defendant's lengthy

9

1  cross examination on the issue of whether the victims engaged in prostitution in August, 2005. Fifth, as

2  only a part of the defendant's exhaustive attempt to impeach Lian and Chi and cumulative to their

3  admission of engaging in prostitution, the Exhibits could not have formed a major part of the defense.

4  Accordingly, there was no error in excluding them.

5            2.      Exclusion Did Not Affect Defendant's Confrontation or Impeachment Rights.[4]

6      The Confrontation Clause did not require the admission of Exhibits A and B. "A limitation on

7  cross examination does not violate the Confrontation Clause unless it limits relevant testimony and

8  prejudices the defendant, and denies the jury sufficient information to appraise the biases and

9  motivations of the witness." United States v. Bridgeforth, 441 F. 3d 864, 868 (9th Cir. 2006) (quotations

10 and citations omitted). In this case, the jury had ample information about the witnesses' activities in

11 July and August. Furthermore, Exhibits A and B – filmed in August and September, 2005 – simply are

12 not relevant to the witnesses' state of mind in October, 2004, which is the only point material to the

13 charges here. Old Chief v. United States does not help the defendant's position, because the defendant

14 was not limited to a "naked admission". 519 U.S. 172, 186 (1997). Instead, the defendant cross

15 examined the witnesses about the events in the video at length. Furthermore, Old Chief actually

16 precluded the government from introducing the facts underlying the defendant's conviction, because it

17 was largely collateral to the actual issues of the case. 519 U.S. at 190. In the same way, the Court

18 refused to admit extrinsic evidence on a collateral matter, consistent as well with the procedure

19 approved in Bridgeforth. 441 F.3d at 868.

---

[4] The defendant argues equally that the exclusion violated her confrontation and impeachment rights. However, the videos were inadmissible to impeach the witnesses' credibility. Fed. R. Evid. 608(b) does not permit the introduction of extrinsic evidence, such as these exhibits, of specific instances of conduct, such as truthfulness. Order in Limine at 2.

E.	The Court Did Not Did Abuse Its Discretion By Admitting Government's 1, 2 and 3.

1.	Exhibit 1 and 1T Were Properly Admitted.

The Court properly admitted Exhibits 1 and 1T. First, it was properly authenticated by Lian, who testified that it was a copy of the flier that she saw in China. This testimony is sufficient under Fed. R. Evid. 901(b)(1) to show that the flier was what it was claimed to be. The government did not need to call the person who posted or drafted the flier to authenticate it; in fact, the government "need not establish a proper foundation through personal knowledge" at all. United States v.Pang, 362 F.3d 1187, 1193 (9th Cir. 2004). Second, the document was not hearsay because it was offered as a misrepresentation and to prove the scheme to defraud, not for the truth therein. United States v. Gibson, 690 F.2d 697, 700 (9th Cir. 1982) ("investors' testimony was offered to prove the *existence* of a scheme; the statements were not offered for their truthfulness") (emphasis in original). Of course, the misrepresentations were also substantive evidence; the government was required to prove that the defendant made misrepresentations as part of the fraud. Anderson v. United States, 417 U.S. 211, 220 (1974) ("the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for a later showing, through other admissible evidence, that they were false"). However, its use in the government's case-in-chief simply does not make it hearsay. Because the exhibits were not hearsay and were not admitted under a hearsay exception, the other cases cited by the defendant simply do not apply to the case.

The Court properly admitted 2 and 2T, which was a purported agreement between the defendant and recruiting company in China. Both Lian and Chi testified that they were shown Exhibit 2 after asking for some proof regarding the relationship between the recruiter and defendant. First, the fact that it purports to be contract has no bearing since the government did not attempt to enforce the contract or show that it was binding on any party. Instead, the document was admitted offered as an example of the fraudulent scheme. Second, for the same reason, the document is not hearsay, as the government did not offer it to prove that there actually was a relationship between the defendant and recruiting company.

11

The Court properly admitted Exhibits 3 and 3T, which was the agreement that Chi signed. Just as with Exhibit 2, the fact that it was an agreement does not affect its admissibility. The government did not attempt to enforce the contract or offer it for the truth of the matter asserted therein. Instead, the government offered it as another misrepresentation made to Lian and Chi. Accordingly, it was not hearsay.

Both Exhibits 1 and 2 were also admissible as admissions by the defendant, since they were signed by the defendant and that signature was authenticated by the witnesses. Admissions are also not hearsay pursuant to Fed. R. Evid. 801(d)(2). Exhibit 3 was also admissible as an adopted admission by the defendant, since there was ample evidence that she acted through Greate Corporation, the other party to the document. Fed. R. Evid. 801(d)(2)(B); <u>United States v. Ospina</u>, 739 F.2d 448, 451 (9th Cir. 1984).

Finally, Fed. R. Evid. 1003 permits the admission of a duplicate, such as Exhibit 1, 2 and 3, to the same extent as the original, so the Best Evidence Rule does not apply to any of these exhibits.

F.    <u>Cumulative Error Do Not Warrant A New Trial.</u>

No errors occured here. However, even assuming an error did occur, such error was harmless beyond a reasonable doubt. The cumulative effect does not warrant a new trial.

III.    CONCLUSION

For the reasons stated above, the Court should deny the defendant's motions for judgment of acquittal and new trial.

Dated: November 8, 2006
       Saipan, CNMI

                              Respectfully submitted,

                              LEONARDO M. RAPADAS
                              United States Attorney
                              Districts of Guam and the NMI

By:    __/s/_____
        TIMOTHY E. MORAN
        Assistant United States Attorney